Shelly Beard
Plaintiff *in Propria Persona*
134 East Colonial Street
Philadelphia, PA 19120
267-770-0748
walkbyfa1th2003@gmail.com

REC'D AUG 17

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
James A. Byrne U.S. Courthouse 601 Market Street Philadelphia, PA 19106

SHELLY BEARD
      PLAINTIFF,

v.                              CASE NO. _____

PHILADELPHIA CORPORATION FOR AGING
      DEFENDANT.
_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

    Plaintiff, Shelly Beard ("plaintiff"), files this Complaint against Defendant, PHILADELPHIA CORPORATION FOR AGING ("defendant") and states as follows:

## INTRODUCTION

1.    This is a claim by plaintiff Shelly Beard against her former employer for the violation of the Americans with Disabilities Act and Amendments Act ("ADA and ADA-AA"), 42 U.S.C. § 12101, et seq., for discrimination and retaliation on the basis of disability, and for prohibited actions taken on the basis of this disability under the "regarded as" prong; and under the "record of" prong; and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur.*

2.    Accordingly, plaintiff brings this action pursuant to the ADA and ADA-AA to recover all available relief in law, including but not limited to: (i) a judgment from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory damages in whatever amount she is found to be entitled; (iv) reinstatement, or in the alternative front pay in the event reinstatement is not practical; (v) an equal amount as liquidated damages, other

- 1 -

*Complaint-- Shelly Beard*

monetary damages; (vi) an award of costs and reasonable court fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-judgment interest; and (ix) a jury trial on all issues so triable.

## JURISDICTION AND VENUE

3.     This court has original and exclusive jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §1331, in that the matters in controversy are brought pursuant to Title I of the Americans with Disabilities Act of 1990 and the ADA and ADA-AA of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

4.     Venue is proper in this judicial district under 28 U.S.C. §1391 because defendant does business in this judicial district and the acts complained of took place in this judicial district.

5.     Plaintiff timely filed a charge of Discrimination against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of March 4, 2022.

6.     On or about May 19, 2022, the EEOC issued plaintiff a Dismissal and Notice of Right to Sue against defendant with regards to this matter. A copy of the Right to Sue letter is attached as Exhibit A – 14.

7.     Plaintiff has exhausted the administrative remedies available to her.

8.     Plaintiff files her complaint within 90 days of the EEOC's issuance of the notice of right to sue.

## PARTIES

9.     Plaintiff, Shelly Beard, resides in Philadelphia, Pennsylvania at the address of 134 East Colonial Street and is a qualified individual with a disability within the meaning of the ADA and ADA-AA.

10.    Plaintiff is an employee of the defendant, which is a "covered entity" within the meaning of the ADA and ADA-AA.

- 2 -

*Complaint-- Shelly Beard*

**11.**   Defendant's principal place of business is located at 642 North Broad Street, Philadelphia, Pennsylvania  19130.

**12.**   At all times material to this action, Plaintiff is an "employee" of defendant within the meaning of the ADA and ADA-AA.

**13.**   At all times relevant, defendant is an "employer" as defined by 42 U.S.C. 12111(5).

**14.**   Since approximately April of 2012, plaintiff has been employed and currently works as a Health Promotion Specialist.

**15.**   At all times material to this action, plaintiff is perceived as having a disability as defined by 42 U.S.C. §12102 (1) (2) and (3).

**16.**   At all times material to this action, plaintiff is engaged in protected activity under the ADA, such as working, breathing, walking, communicating.

**17.**   At all times material to this action, plaintiff is subjected to adverse actions prohibited under 42 U.S.C. §12102 (1) (2) and (3), because of perceived physical impairments whether or not these perceived impairments limited or were perceived to limit major life activities.

**18.**   Plaintiff is mis-classified as having an impaired immune system and an impaired respiratory system by defendant;

**19.**   Plaintiff is not allowed full access to work in-person because of defendant's discriminatory perceptions, policies and procedures.

**20.**   At all times material to this action, plaintiff is a "qualified individual" under the ADA and ADA-AA.

**21.**   At all times material to this action, plaintiff is a person who meets the legitimate skill, experience, education, or other requirements of the employment position that plaintiff holds.

**22.**   At all times material to this action, plaintiff can/could perform the "essential functions" of the position plaintiff holds with or without reasonable accommodation.

**23.**   At all times material to this action, defendant is/was an employer covered by the ADA and ADA-AA in that it employs more than 15 employees.

*Complaint-- Shelly Beard*

**24.**   At all times material to this action, plaintiff is an employee entitled to be free from discrimination on the basis of a perceived disability under the ADA and ADA-AA.

**25.**   Additionally, defendant is not eligible for any exemption under the ADA and ADA-AA, and, indeed, did not seek or obtain an exemption.

## PLAIN STATEMENT

**26.**   Defendant's policies and procedures demonstrate that it discriminates against plaintiff based upon perceived disability.  When plaintiff objected and gave notice to the defendant that she was a qualified individual with disability who was being "regarded as" having a disability the defendant continued to impose accommodations; including but not limited to: medical examinations, medical interventions including mask-wearing, testing and experimental injections; without first conducting an individualized assessment to determine if she is a direct threat.  Defendant uses policies and procedures to harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and inquiries upon plaintiff.  Defendant also retaliates against plaintiff by interfering with her rights, imposing punitive measures including isolation and medical examinations, threatening to withhold her pay, which is prohibited under the ADA and ADA-AA.

## STATEMENTS OF FACT

**27.**   The Americans with Disabilities Act Amendments Act ("ADA and ADA-AA"), 42 U.S.C. § 12101, et. seq., as amended is a remedial statute aimed at addressing and providing remedy in response to Congress's findings that discrimination against individuals with physical or mental disabilities persist in critical areas like employment, and our nation's goals with respect to individuals with disabilities is to assure equality of opportunity and participation. 42 U.S.C. § 12101(a)(1)-(8). The ADA and ADA-AA is meant to protect qualified employees, like plaintiff, from discrimination, harassment and retaliation in the workplace on account of a real or perceived mental or physical disability.  42 U.S.C. § 12112.

**28.**   On the date of February 15, 2022 the plaintiff gave notice to the defendant that she was regarded as having a disability.

- 4 -

*Complaint-- Shelly Beard*

**29.**   The plaintiff did not request any reasonable modification or accommodation to the defendant's so-called "COVID" policy.

**30.**   The defendant is making a record of this disability by mis-classifying plaintiff as substantially limited with impaired immune and respiratory systems affecting her ability to perform major life activities in the workplace including working, communicating with others, performing manual tasks, talking, walking, breathing and others expressed in the ADA itself, but not limited thereto, without the use of mitigation measures.

**31.**   Plaintiff on many occasions duly noticed defendant of her good faith opposition to discriminatory policies and procedures.

**32.**   While the defendant ignorantly and illegally ignored and denied plaintiff's notice that she as regarded as having a disability, and that she was a qualified individual with a disability, by continuing to impose its discriminatory policies upon the plaintiff in violation of the ADA and ADAAA.

**33.**   Individuals who give notice that they are a qualified individual with a disability, because they are regarded as having a disability, are considered as having a disability under the ADA.

**34.**   At all times material to this action plaintiff was engaged in the exercise and enjoyment of one or more major life activities protected under the ADA, such as working, breathing, walking.

**35.**   Under the ADA and ADA-AA an employer may not require an individual with disability to accept accommodations which such qualified individual chooses not to accept. 29 CFR 1630.9 (d).  This is especially disturbing when accommodations are imposed for a perceived and unproven disability which has no basis in fact.

**36.**   Under the ADA and ADA-AA an employer is required to conduct an individual assessment to determine whether an employee poses a 'direct threat' before it can impose any measures upon the employee.  29 CFR §1630.2 (r)

*Complaint-- Shelly Beard*

**37.**   Under the ADA and ADA-AA it is considered discrimination on the basis of disability if the employer limits, segregates, or classifies an employee in a way that adversely affects such employee because of the disability.  42 USC § 12112

**38.**   Under the ADA and ADA-AA an employer who discharges, disciplines, or discriminates against an employee in the manner described in subsection (a) is considered to have violated 29 CFR §1630.4 (a)

**39.**   Under the ADA and ADA-AA employers are prohibited from to use standards, criteria, or methods of administration, which are not job-related and consistent with business necessity.   29 CFR §1630.7

**40.**   Under the ADA and ADA-AA employers are prohibited from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing. 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b) and Part 1630.14(c) and shall be subject to the enforcement provisions relevant to such violations set forth in sections 42 U.S. Code § 12117,  42 U.S. Code § 12133 and 42 U.S. Code § 12188.

**41.**   Under the ADA and ADA-AA employers are prohibited from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b).

**42.**   Under the ADA and ADA-AA, employers are prohibited from sharing non-job-related medical classification without any regard to confidentiality;  29 CFR §1630.14 (c).

**43.**   Plaintiff may proceed under the "regarded as" prong and the "record of" prong and this court has jurisdiction under the "regarded as" prong of the ADA and ADA-AA.

## GENERAL ALLEGATIONS

**44.**   At all times material to this action, defendant failed to comply with its duty under the ADA and ADA-AA.

*Complaint-- Shelly Beard*

**45.**    On the date of February 15, 2022, the plaintiff gave notice to the defendant that she is a qualified individual with a disability.  At that moment, the plaintiff was in a protected class and engaged a protected activity, and not required to participate in the defendant's so-called "COVID" policy under 29 CFR Part 1630.9(d), unless the defendant establishes an exemption or exception to its legal duty to comply with the Americans with Disabilities Act.

**46.**    Exercising this right was a protected activity and the defendant's so-called "COVID" policy was not equally or universally applied to the plaintiff because she had given notice of a disability and is therefore in a protected class and engaged a protected activity.

**47.**    Defendant imposed non job related medical examinations and interventions and made non job related medical inquiries of the plaintiff which were not consistent with business necessity.

**48.**    Defendant misclassified plaintiff as substantially limited and refused to allow plaintiff to perform several major life activities without using mitigation measures.

**49.**    Defendant was required to either provide equal access or claim exemption to the ADA and ADA-AA and it did neither; thus defendant failed to perform its duty under the ADA and ADA-AA.

**50.**    Defendant discriminated and retaliated against plaintiff for making a complaint that she was being regarded as disabled, thus asserting her entitlement to equal access under the ADA and ADA-AA.

**51.**    The defendant failed to conduct any individualized assessment[1] establishing that plaintiff's good faith refusal to participate in its so-called "COVID" policy is a direct threat; however, defendant denies that the plaintiff is regarded as having a disability and then denies that the plaintiff is a qualified individual with a disability and continues to demand that plaintiff participate in its "health control measures" or accommodations such as mask-wearing, medical examinations, inquiries and treatments under Emergency Use Authorization ("EUA").

---

1 EEOC Technical Manual 2.2 (c)   "…the Supreme Court has stated and the Congress has reiterated, "society's myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairments."  The legislative history of the ADA indicates that Congress intended this part of the definition to protect people from a range of discriminatory actions based on "myths, fears and stereotypes" about disability, which occur even when a person does not have a substantially limiting impairment."

- 7 -

*Complaint-- Shelly Beard*

**52.**   Denying that the plaintiff had a disability because she is regarded as having a disability is not a defense to violating the Americans with Disabilities Act.

**53.**   It is not relevant whether or not the defendant denies regarding the plaintiff as having a disability, the fact is that she was regarded as, and gave notice to the defendant that she was regarded as having a disability, irrespective of the defendant's bad faith and contradictory denial of the same.

**54.**   Ignoring proper notice that the plaintiff is regarded as having a disability and that she is a qualified individual with a disability is not a defense to violating the Americans with Disabilities Act.

**55.**   Ignorance of the law is not a defense.

**56.**   Rather than providing equal access or proving any exemption to complying with the ADA and ADA-AA, defendant embarked on a series of adverse employment actions against plaintiff which were designed to deter plaintiff's good faith opposition to the policies and procedures.

**57.**   Defendant's policies and procedures segregated the plaintiff based on physical condition.

**58.**   Defendant's policies and procedures limited plaintiff's access to the workplace based on perceived disability.

**59.**   Defendant's policies and procedures refused to allow plaintiff to perform her employment duties without using mitigation measures.

**60.**   Defendant's policy and procedures limited plaintiff's right to invoke ADA and ADA-AA protections by refusing to recognize that plaintiff could claim a reason under Federal law for refusing to comply with the policy and procedures.  Instead, defendant insisted that plaintiff could only claim a "medical" or "religious" exemption, which is interference with plaintiff's rights under the ADA and ADA-AA.

**61.**   Defendant continued to engage in adverse employment actions, such as threatening with termination, when plaintiff claimed the right of informed consent and the right to refuse

*Complaint-- Shelly Beard*

to take part in clinical trials and noticed defendant that all the imposed mitigation measures fall under an EUA period.[2]

**62.**   Defendant's violation of the ADA and ADA-AA was not in good faith and was willful, and plaintiff sustained damages as a result of defendant's conduct including past and future earnings, lost opportunities and benefits, liquidated damages, emotional distress, and reasonable attorneys' fees and or costs.

**63.**   Plaintiff re-alleges each statement from the affidavit herein.

## COUNT I
## DISCRIMINATION UNDER THE ADA and ADA-AA FOR PERCEIVED DISABILITY

**64.**   Plaintiff incorporates each of the pertinent statements of fact above; and the pertinent allegations contained in the paragraphs 1 through 63 and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

**65.**   Title I of the ADA prohibits employment discrimination on the basis of disability in all aspects of employment, in 29 CFR § 1630 *et sequitur;* and particularly §1630.4; § 1630.5.

**66.**   Plaintiff is a qualified individual under the ADA and ADA-AA.

**67.**   On the date of December 23, 2021 defendant announced to the plaintiff, and all employees, that it would begin implementing a policy known as its "COVID" vaccine policy.

**68.**   The defendant stated that the purpose and intent of the policy was to "prevent the spread of COVID".

**69.**   The defendant informed the plaintiff that the policy was a condition of continued employment with the plaintiff.

**70.**   The defendant's so-called "COVID" policy includes accommodations, or measures and practices such as wearing a surgical mask, remaining six feet apart from other employees, taking specific vaccines pertaining to the so-called "COVID disease", disclosing medical records and medical history, and submitting to medical examinations and the collection of plaintiff's vital statistics.

2   Title 21, Chapter 9 V, Part E §360bbb–3a. Emergency use of medical products.

- 9 -

*Complaint--* Shelly Beard

**71.** The defendant never provided notice of any kind to the plaintiff, advising the plaintiff as to the manner in which such accommodations are related to her essential job function.

**72.** In fact, none of the accommodations are related to the plaintiff's essential job function because she was able to continue performing her essential employment duties without participating in the defendant's so-called "COVID" policies.

**73.** The defendant failed to identify or describe any set of facts establishing that the plaintiff's good faith refusal to participate in the defendant's so-called "COVID" policy would have created any undue financial hardship.

**74.** The defendant failed to identify or describe any set of facts establishing that the plaintiff's good faith refusal to participate in the defendant's so-called "COVID" policy would have fundamentally altered its normal operations. In fact, the defendant's so-called "COVID" policy did in fact fundamentally alter its normal operations.

**75.** The defendant failed to identify or describe any set of facts establishing that the disability its so-called "COVID" policy was intended to prevent was both transitory and minor.

**76.** The defendant failed to establish any set of facts that the so-called "COVID" disease is transitory because it has supposedly created a world-wide pandemic that began at the end of the year 2019 and supposedly continues to this day, including new strains (variations) and "long COVID" and "short COVID", all based upon the claim that these are and have been since the end of 2019, deadly contagious diseases.

**77.** The defendant cannot now claim that such disability is "transitory", especially since it is not acting upon any medical diagnosis, court order obtained by the Department of Health regarding the plaintiff or individualized assessment establishing that the plaintiff individually is a direct threat.

**78.** Moreover, defendant failed to identify or describe any set of facts establishing that the disability its so-called "COVID" policy is intended to prevent is both transitory and minor. If the so-called "COVID" disease does exist, it is certainly not minor as anyone can obviously conclude by the news and government announcements of a public health

emergency. Either way, the defendant has failed to establish any set of facts that the disability its policy seeks to mitigate, is not both transitory and minor.

79. The defendant's so-called "COVID" policy was not uniformly or universally applied to the plaintiff once she gave notice that she was a qualified individual with a disability and that she was regarded as having a disability.

80. The plaintiff is not required to discuss the nature of such disability and because such disability is not job related and the plaintiff is not requesting reasonable modifications, again, she is therefore not required to discuss the nature of such disability, no more than she is required to participate in the plaintiff's so-called "COVID" policies.

81. Not only is the defendant's so-called "COVID" policy is not rational, and not implemented with any legal authority or duty whatsoever, there is no rational basis to act as if every single member of a community (e.g. all employees of the defendant) suddenly have the same exact illness (disability) and that without any examination of anyone, everyone would benefit from the same exact medical treatment and that non-skilled and unlicensed individuals should impose such intervention upon everyone at the same time because of some commentary on a website (e.g. CDC, EEOC, etc.) that says it's a good idea, while simultaneously disclaiming such commentary as valid legal or medical advice. In fact, this practice, regarding oneself and others as having an illness without any diagnosis, and then seeking to treat everyone with the same medical intervention without any diagnosis, is defined as a mental illness in the Fifth Edition of the Diagnostic and Statistical Manual for Mental Health. The defendant's so-called "COVID" policy demonstrates that those seeking to impose it upon employees and the plaintiff are suffering from an un-diagnosed mental illness and have demonstrated that each of them are a danger to themselves and others and must be ordered to submit to an involuntary mental evaluation.

82. A plaintiff meets the burden of proving discrimination by showing that she falls within a protected group, that she is qualified for the position she holds, that she was subject to an adverse employment action and that the adverse employment action was taken under the circumstances giving rise to the facts which constitute unlawful discrimination.

- 11 -

*Complaint*-- Shelly Beard

**83.**   Plaintiff identified herself as being within a protected group and engaged in a protected activity upon giving the defendant notice that she is regarded as having a disability and that she is a qualified individual with a disability and then refusing the defendant's accommodations based upon her good faith belief.

**84.**   Beginning from the moment she gave such notice to the defendant, the plaintiff suffered adverse employment actions by the defendant.

**85.**    Despite having knowledge of plaintiff claiming protected status under the ADA and ADA-AA, the defendant continues attempting to impose its so-called "COVID" policies upon the plaintiff.

**86.**   Defendant continues ignoring and denying her claim of disability and continues reprimanding her, on a daily basis, for refusing its accommodations as alleged in the plaintiff's affidavit.  All written communications are attached as Exhibit A.

**87.**   Defendant's responses to the requests made by plaintiff to cease the discrimination and harassment were in fact non-responsive, dismissive or harassing; a true and correct copy of each written communication is included with Exhibit A.

**88.**   Defendant's "COVID-19 policies and procedures" classified plaintiff in such a way that plaintiff's employment opportunities are adversely affected and limited because defendant would not permit plaintiff to do her job without first submitting to defendant's accommodations ("mitigation measures").[3]

**89.**   Defendant required non-job-related medical examinations of plaintiff that were not consistent with business necessity.

**90.**   Defendant made disability-related inquiries[4] of plaintiff that were not consistent with business necessity.

---

3 prohibited by 29 CFR § 1630.5

4   Prohibited by 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b)

- 12 -

*Complaint-- Shelly Beard*

91.     An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job[5] with or without reasonable accommodations.

92.     Plaintiff is qualified for the job and both willing and able to continue performing her employment duties and that the defendant's so-called "COVID" policy is not related in any way to her essential job functions.

93.     Defendant has failed to conspicuously disclose or gave legally adequate notice that complying with the COVID-19 mitigation measures ("accommodations") are an **essential function** of the job of Health Promotion Specialist; and these measures have never previously been an essential function of plaintiff's job.

94.     Plaintiff claimed her right not to provide any medical information that is not related to the performance of her job duties.

95.     If plaintiff had previously made at least one request for reasonable modifications, plaintiff has since withdrawn such request.

96.     Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

97.     The ADA and ADA-AA also protects individuals such as plaintiff for whom submitting to certain accommodation measures would create impairments. The accommodations include, but are not limited to, taking experimental injections under Emergency Use Authorization (EUA) which are being promoted as "vaccines" but which are not legally vaccines; submitting to repetitive, non-job-related medical examinations (nasal tissue testing, temperature checks); being placed under isolation, segregation and quarantine without due process; using medical devices for mitigation measures[6] (masks); disclosing plaintiff's medical records and history for non-job-related matters and participating in clinical trials and epidemiological experiments as a condition of employment.

---

5   29 CFR 1630.2(n)(2) definition "Essential Function": "(i) ....the reason the position exists is to perform that function."

6   Section 201(h) Food, Drug & Cosmetic Act

*Complaint*-- Shelly Beard

**98.**   Plaintiff requests that the court take judicial notice of the official mortality rates of the State of Pennsylvania and the United States for the years from 2017, 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of no verifiable "pandemic".

**99.**   Plaintiff has been damaged by defendant's violation of the ADA and ADA-AA and has suffered damages, lost opportunities and benefits, and emotional distress.

**100.**   The conduct of defendant and its agents and employees proximately, directly, and foreseeably, injured plaintiff, including but not limited to, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

**101.**   The conduct of defendant was so willful and wanton and in such reckless disregard of the statutory rights of plaintiff so as to entitle her to an award of punitive damages against defendant, to deter it, and others, from such conduct in the future.

**102.**   As a result of defendant's actions plaintiff has experienced discrimination, segregation, isolation.

**103.**   Plaintiff is entitled to any and all relief permitted under the ADA and ADA-AA, 42 U.S.C. § 12117(a), including equitable relief.

## COUNT II
## RETALIATION UNDER THE ADA and ADA-AA

**104.**   The ADA and ADA-AA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing under the ADA, Title 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c).

**105.**   Plaintiff incorporates each of the pertinent statements of fact above; and the pertinent allegations contained in the paragraphs 1 through 63 and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

**106.** In March of 2021, defendant began unceasingly to retaliate against plaintiff despite plaintiff's reasonable good faith belief that she was exercising protected opposition to discrimination and claiming rights protected under the ADA and ADA-AA.

**107.** Upon giving defendant notice that she was regarded as having a disability and that she was a qualified individual with a disability, the defendant began retaliating against the plaintiff by imposing punitive measures upon her for her good faith refusal to participate in the defendant's offered accommodations.

**108.** Defendant retaliated by seeking to impose its so-called "COVID" policy upon the plaintiff just like it had before receiving plaintiff's notice of disability, as if defendant never received such notice.

**109.** Plaintiff was threatened more than once to be suspended with unpaid leave, and terminated because of her unvaccinated condition.

**110.** The defendant imposed pecuniary measures, adverse employment actions, upon plaintiff which included reprimanding her, isolating her from other workers and from her normal employment station.

**111.** Each of the foregoing adverse employment actions resulted from every effort the defendant undertook to coerce the plaintiff into submitting to its so-called "COVID" policy accommodations.

**112.** Each adverse employment action described herein was causally related to plaintiff good faith refusal to comply with defendant so-called "COVID" policies.

**113.** Each adverse employment action took place within moments of,  and in direct response to, plaintiff expression of her good faith refusal to comply with defendant's so-called "COVID" policy.

**114.** Defendant required the plaintiff to disclose her medical information which was not job related.

**115.** Plaintiff has successfully stated a violation of the Act simply because she has been subjected to an action prohibited under the law because of perceived physical impairment.

- 15 -

*Complaint*-- Shelly Beard

**116.** Defendant continued to threaten the plaintiff with suspension, dismissal, and termination even after it was aware of a pending EEOC investigation and plaintiff's protected opposition status.

**117.** Defendant coerced plaintiff to submit to the accommodation measures, medical interventions and examinations and other health control measures, even though defendant was duly advised by plaintiff that she was not subject to any health control measures by any court order, and that the defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon plaintiff.

**118.** Despite having knowledge of plaintiff claiming protected status under the ADA and ADA-AA, defendant threatened with termination of plaintiff's employment due to plaintiff's opposition to discriminatory policies and procedures.

**119.** Defendant encourages employees to harass plaintiff with repetitive emails, intimidating interactions and threats of termination.

**120.** The defendant's retaliation was directly related to plaintiff engaging in protected activity under the ADA.

**121.** Defendant also failed to give notice of plaintiff's right to refuse defendant's accommodations under the ADA and ADA-AA[7].

**122.** Defendant failed to advise plaintiff of her right to informed consent, which is considered interference with the exercise of plaintiff's rights under the ADA and ADA-AA.

**123.** At all times material to this action, defendant interfered with the exercise of plaintiff's rights under the ADA and ADA-AA.

**124.** As a result of defendant's intentional, willful and unlawful acts of retaliating against plaintiff by threatening unpaid leave and interfering with plaintiff's rights to refuse defendant's accommodations under the ADA and ADA-AA, plaintiff has suffered injury and damages.

**125.** The injury suffered by plaintiff is thereby concrete and particularized and it is actual and imminent.   The injury alleged in the complaint, including the pleading and exhibits,

7   29 CFR Part 1630.9 (d) & (e)

*Complaint*-- Shelly Beard

clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical. The injury described therein is at least fairly traceable to the challenged action, conduct and policies of defendant.

**126.**  The harm (injury) already suffered by plaintiff includes, but is not limited to, having to choose between waiving rights to: medical privacy, informed consent, refusal to take part in clinical trials, and be free of discrimination and retaliation OR having plaintiff's employment terminated.  Once violated, these rights cannot be recovered.

**127.**  Defendant's policies and procedures demonstrated soundly and convincingly that it intends to inflict future harm against plaintiff based upon perceived disability; it fully intends to continue these policies and it fully intends to continue retaliating against plaintiff as alleged herein.

**128.**  As a result of defendant's actions the plaintiff has experienced retaliation, coercion, interference, termination and disruption in plaintiff's career.

**129.**  Defendant's efforts were to terminate plaintiff, rather than to provide equal access, per defendant's duty, and were not objectively or subjectively in good faith, therefore plaintiff is entitled to liquidated damages or other monetary damages, including punitive damages to the extent available.


## DEMAND FOR JUDGEMENT FOR RELIEF

**WHEREFORE**, Plaintiff expressly reserves the right to amend her complaint at or before the time of trial of the action herein to include all items of damages not yet ascertained, and demands all applicable relief including, but not limited to:

a.     Judgment in plaintiff's favor and against defendant for violation of the anti-discrimination provisions of the ADA and ADA-AA;

b.     Ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

- 17 -

*Complaint-- Shelly Beard*

c.      Take such affirmative steps as may be necessary to prevent the recurrence of any discrimination, retaliation, coercion, interference and intimidation and to eliminate, to the extent practicable, the effects of such conduct.

d.      Reinstatement, or, in the alternative, front pay in the event reinstatement is not practical;

e.      Judgment in plaintiff's favor and against defendant for actual and compensatory damages, including lost earnings, back pay, front pay, and/or all actual monetary losses suffered as a result of defendant's conduct;

f.      Judgment in plaintiff's favor and against defendant for plaintiff's reasonable court fees and litigation expenses;

g.      Judgment in plaintiff's favor and against defendant for punitive damages; and

h.      Assess a civil penalty against the defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and

i.      An order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

j.      Plaintiff demands a jury trial.

DATED this 15th day of August 2022.

*Shelly Beard*

Shelly Beard, Plaintiff

- 18 -

*Complaint*-- Shelly Beard

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Shelly Beard

## DEFENDANTS
PHILADELPHIA CORPORATION FOR AGING

**(b)** County of Residence of First Listed Plaintiff  PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [x] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 1 of the Americans with Disabilities Act

Brief description of cause:
Discrimination and Retaliation under the ADA

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  8/17/2022

SIGNATURE OF ATTORNEY OF RECORD  *Shelly Beard*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____