# EXHIBIT A-1

Written Communications

## FW: I Have a vaccine appointment tomorrow!!

Winn, Elizabeth

**Sent:** Tue 3/16/2021 12:39 PM

**To:** Shanker, Patrice; Merrill, Stephen; Jirinec, Lauren; Beard, Shelly; Wilson, Tyeisha; Pleasants, Kamisha; Goldstein, Amy; Young, Skylar

Just FYI

I have a doctor's appointment then a vaccine appointment tomorrow morning (10:13 AM), so I'll be taking ½ day.

WooHoo!!!



# EXHIBIT A-2

Written Communications



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

02/12/2021

# The COVID-19 vaccine rollout and what it means to you



*UPDATED 3/11/21*

As the COVID-19 vaccine rollout continues in the Philadelphia region and across the nation, we know that PCA staff members have questions about the vaccine, the dissemination and process of receiving the vaccine, and what it means to them in their roles at PCA.

PCA is working with the Philadelphia Department of Public Health as a member of the city's Vaccine Advisory Committee (VAC) to receive the most timely and accurate information on what the vaccine rollout means for our staff and the city's older adult population. PCA also recently formed its own internal COVID-19 vaccine committee to navigate the latest information from city, state, and federal agencies to assist all PCA and PCA CC staff and the consumers we support.

The vaccine rollout is a process that will evolve as vaccine supplies begin to increase and local health departments release further information on their plans to immunize the population at large. PCA is committed to monitoring the most up-to-date information on the vaccine rollout

The COVID-19 vaccine rollout and what it means for you - PCA infoloom
Case 2:22-cv-03301-JFM   Document 1-1   Filed 08/17/22   Page 5 of 102
Page 2 of 5

and will provide regular updates to staff to promote the health and safety of our employees, as well as the older adults we support in the Philadelphia community.

PCA held a virtual town hall for employees centered on the COVID-19 vaccine with President & CEO Najja Orr and representatives from the Philadelphia Department of Public Health on Tuesday, March 2. You can watch a recording of that town hall by clicking here.

## Here are answers to a few questions you might have right now:

**I have concerns or questions about the vaccine. Where can I learn more about it?**

PCA strongly recommends that employees receive the COVID-19 vaccine to help reduce the spread of COVID-19 in our communities. The Philadelphia Department of Public Health has released a COVID-19 vaccine fact sheet to answer some of the most frequently asked questions (FAQs) about the vaccine. The information is available in seven languages below:

- COVID-19 Vaccine FAQ Sheet – English
- COVID-19 Vaccine FAQ Sheet – Spanish
- COVID-19 Vaccine FAQ Sheet – Chinese
- COVID-19 Vaccine FAQ Sheet – Vietnamese
- COVID-19 Vaccine FAQ Sheet – Russian
- COVID-19 Vaccine FAQ Sheet – French
- COVID-19 Vaccine FAQ Sheet – Korean

**Am I eligible to receive the vaccine now? If not, how do I know when I will be eligible?**

Vaccines will be distributed to Philadelphians in accordance with the Philadelphia Interim COVID-19 Vaccination Plan and are now available to people who are eligible in phase 1a and phase 1b of the city's vaccination plan. Those who live in Philadelphia can register with the city to receive the vaccine at covid-vaccine-interest.phila.gov. The form is available in English, Spanish, French, Chinese and Vietnamese. Users can select their language at the top of the form.

**Where can I get the vaccine?**

More information can be found on the City of Philadelphia's COVID Vaccine FAQ page. PCA staff is also encouraged to register with their county or state for eligibility:

- Pennsylvania:
  - [Philadelphia](#)
  - [Bucks County](#)
  - [Delaware County](#)
  - [Montgomery County](#)
- [New Jersey](#)
- [Delaware](#)

## Vaccination Sites in Philadelphia

To date, Philadelphia has announced three City-run mass vaccination clinics. They are:

- Community Academy of Philadelphia Charter School in Harrowgate
- Martin Luther King Older Adult Center in North Philadelphia
- University of the Sciences in West Philadelphia

In addition, the City has also partnered with FEMA to open a mass vaccination site on Wednesday, March 3, at the Pennsylvania Convention Center in Center City. This site will receive its own vaccine doses independent of the City's current allocation and is expected to distribute up to 6,000 doses per day. These sites are not accepting walk-ins, so you **must** register through the vaccine interest form (above) in order to receive an invitation to schedule an appointment.

The City has also created an [interactive map of 108 sites](#) that have been approved for vaccine administration. All sites located on the map are eligible to receive vaccine, but they may have not all received vaccine yet. As noted by the City, this map should **not** be used to schedule appointments.

If residents have issues filling out the online vaccine interest form, they can call the Health Department at (215) 685-5488, contact 311, or email [covid@phila.gov](mailto:covid@phila.gov).

## Addressing Questions from Consumers and Participants

Staff members may be asked questions by participants and consumers about the COVID-19 vaccine. It is important that staff members do not give their own personal opinions when representing PCA in place of official guidance or provide inaccurate or incomplete information. Staff should direct consumers to resources from the Philadelphia Department of Public Health

whenever possible. Below are a few questions you may be asked and the recommended responses.

**Should I get the COVID-19 vaccine?**

According to Pennsylvania Department of Health, older adults and those with chronic medical conditions like heart, lung or kidney disease are at higher risk for more serious COVID-19 illness. Health care professionals recommend that older adults receive the COVID-19 vaccine to reduce their risk of serious illness. Those who have any concerns about the vaccine should discuss them with their primary health care provider.

**Am I eligible to receive the vaccine now?**

Vaccines are being distributed to Philadelphians in phases, based on a person's level of risk of acquiring infection, transmitting infection to vulnerable persons, or suffering severe consequences of infection. Vaccines are now available to people who are eligible in phase 1a and phase 1b of the city's vaccination plan. As of March 10, this includes all Philadelphians age **65 and older** and those under age 65 who have high-risk medical conditions.

**How do I get the vaccine?**

Philadelphians can register with the city to receive the vaccine at covid-vaccine-interest.phila.gov. The online form is available in English and Spanish. Those without internet access or those who need assistance filling out the form should call 311 or the Philadelphia Department of Public Health COVID-19 Call Center at 215-685-5488. Assistance is available in many languages.

*Please continue to check i-Net on a regular basis as more information will continue to be shared. In the meantime, if you have any questions about PCA's COVID-19 policies and procedures, please reach out to the Human Resources Department.*

Case 2:22-cv-03331-JFM Document 41-1 Filed 08/17/23 Page 8 of 102



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

03/02/2021

# Did you miss PCA's March 2 town hall about the COVID-19 vaccine? Watch a replay here!

As part of our efforts to keep staff informed of the latest updates regarding the COVID-19 vaccine rollout, PCA hosted a virtual town hall for PCA staff on Tuesday, March 2 with representatives from the COVID-19 Immunization Program, under the Philadelphia Department of Public Health.

The town hall was moderated by PCA President & CEO Najja Orr. Following a presentation from Dr. Julianne Burnes and Nurse Practitioner Nicole Spector from the Philadelphia Department of Public Health, Najja asked the health department representatives a few questions that were submitted by PCA staff members.

If you could not attend the town hall, or if you would like to watch it again, click on the image below to view a recorded version of the event:



## Additional Staff Questions About the COVID-19 Vaccine Rollout

With respect to the busy schedules of Dr. Burns and Ms. Spector, we chose to answer the PCA-specific questions submitted by staff members below:

**Q: Is there a prediction as to when we will be expected to return to the field?**

A: PCA will continue to monitor the COVID-19 positivity rate in Philadelphia. Once Philadelphia is consistently below four percent positivity per 100,000 residents, we will be expected to start resuming face-to-face visits. The resumption of face-to-face visits will be program specific, and adequate time for planning will be provided.

**Q: As in the fall, will consumers have a choice to do an in-person or phone visit?**

A: Consumers currently have the right to refuse face-to-face visits based on their level of comfort. PCA will notify staff if and when this expectation changes, based on guidance from the Pennsylvania Department of Aging.

**Q: Is it premature to ask about risks in returning to the 642 building after vaccination?**

A: We will await guidance from the Philadelphia Department of Public Health regarding the maximum number of people allowed indoors and in meetings. However, we plan to continue to put into practice strategies and efficiencies gained over the past year with regard to remote work. Health officials continue to stress the importance of mask-wearing and physical distancing to reduce the spread of COVID-19, even for those who have been vaccinated. More details will be forthcoming regarding next steps related to our continued remote versus in-building practices.

**Q: Can PCA use the atrium or other area of the building to do a mass vaccination for staff and eligible consumers or area residents?**

A: We currently do not have the authority or resources to implement this. If this status changes, we will notify staff.

**Q: Can the city assist with vaccinating PCA consumers in their homes who are homebound and unable to leave their home for a vaccination?**

A: PCA's Vaccine Committee is currently working on recommendations to present to the Philadelphia Department of Health. More details will be provided once they are finalized.

Case 2:22-cv-02031-JFM   Document 60   Filed 08/27/22   Page 10 of 102

**Q: Will PCA be able to assist employees who do regular home visits with consumers (i.e. care managers, assessment workers, OAPS workers, etc.) with obtaining vaccinations before being sent into the field?**

A: PCA staff are encouraged to register for the vaccine in their county/state of residence and to pursue options for getting vaccinated when they are eligible. We will continue to share information regarding vaccination sites in Philadelphia on i-Net as it is made available. To find the vaccine registration information in your county or state, please see this post on i-Net. For information on mass vaccination sites and other clinics in Philadelphia, click here.

—

As you know, i-Net is PCA's primary communication vehicle with staff. We encourage everyone to continue to check i-Net regularly for updates and the latest news related to COVID-19 and the vaccine rollout.

Case 2:22-cv-08831-JFM Document 1-1 Filed 08/17/22 Page 11 of 102



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

03/02/2021

# COVID-19 vaccine update: All adults in Philadelphia are now eligible

*UPDATED 4/16/21*

On Friday, April 16, the Philadelphia Department of Public Health (PDPH) announced that all Philadelphia residents are eligible to receive the COVID-19 vaccine, effective immediately.

**UPDATE ON JOHNSON & JOHNSON VACCINE IN PHILADELPHIA**

Due to a joint statement released this week by the Food and Drug Administration (FDA) and the Centers for Disease Control and Prevention (CDC), all COVID-19 vaccine clinics in Philadelphia have stopped using the Johnson & Johnson vaccine as of April 13, 2021. The City and all partner clinics will not provide this vaccine again until receiving further guidance.

A number of clinics in Philadelphia had been giving out Johnson & Johnson vaccines. These clinics are no longer giving out the Johnson & Johnson vaccine and may have closed or switched to another vaccine. See the full announcement from the Philadelphia Department of Public Health.

**Vaccine information for PCA employees**

PCA is encouraging its staff to consider guidance from the Philadelphia Department of Public Health and to register for the COVID-19 vaccine under the City of Philadelphia's COVID-19 Vaccine Interest Form. The City will notify staff after they are registered and are eligible for the vaccine when vaccination appointments are available to them.

Philadelphia has announced a number of City-run mass vaccination clinics. They are:

- Community Academy of Philadelphia Charter School in Harrowgate

- Martin Luther King Older Adult Center in North Philadelphia

- Simon Gratz High School Mastery Charter in Nicetown-Tioga

- Edward O'Malley Athletic Association in Pennsport

- Grand Yesha Ballroom in South Philadelphia

- University of the Sciences in West Philadelphia

- Salvation Army in West Philadelphia

- Cannstatter Volksfest Verein in Northeast Philadelphia

In addition, the City has also partnered with FEMA to open two mass vaccination sites in Philadelphia at the Convention Center in Center City and at Esparanza in Hunting Park.

**Center City Vaccination Center**

The Center City Vaccination Center receives its own vaccine doses independent of the City's current allocation and is currently distributing up to 6,000 doses per day. The site will be open through May 26. **The Center City Vaccination Center is currently accepting walk-ups between the hours of 8 a.m. and 4 p.m.**

**Esperanza Community Vaccination Center**

The Esperanza site has the capacity to vaccinate more than 1,000 Philadelphians per day.

**No appointments are necessary at the Esperanza site.** Walk-ins will be accepted; however, residents must arrive an hour prior to closing to be accommodated. All you need to bring is a single proof of residency (a utility bill is sufficient).

The Esperanza Community Vaccination Center will operate six days a week. The times of operation will vary for easier scheduling.

- Monday and Tuesday from 7 a.m. to 3 p.m.

- Wednesday and Thursday from noon to 8 p.m.

- Friday – Closed

- Saturday and Sunday 9 a.m. to 5 p.m.

See more about the Esperanza site from the Philadelphia Department of Public Health.

**Interactive Vaccination Center Map**

The City has also created an interactive map of 250+ sites that have been approved for vaccine administration. All sites located on the map are eligible to receive vaccines, but they may not have received their vaccines yet. As noted by the City, this map should not be used to schedule appointments.

The openings of both the City and FEMA's mass vaccination clinics are signs of great progress in the City's vaccination efforts. Vaccine quantities still remain low, however, relative to the City's population. Registering through the vaccine interest form is currently the best way to ensure you can schedule an appointment once you are eligible. We also encourage all those who live outside of the City to check i-Net for links to COVID-19 vaccine forms in neighboring states and counties.

PCA's internal vaccine committee is working swiftly to support staff and consumers in the vaccination process. In addition to helping to deliver information to staff and consumers, the committee is working on recommendations to the City to support vaccination efforts for homebound consumers, as well as assisting in getting people registered through the vaccine interest form.

PCA remains committed to assisting staff in navigating the challenges associated with the pandemic. As we have said since the beginning of COVID, we will get through this together!

Case 2:22-cv-03331-JFM Document 11-1 Filed 08/17/22 Page 15 of 102



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

03/29/2021

# Did you miss PCA's community town hall on the COVID-19 vaccine? Watch a replay here

On Wednesday, March 24, PCA hosted a virtual community town hall about the COVID-19 vaccine for older adults, their caregivers, and members of the community. The event featured the latest information related to the COVID-19 vaccine and addressed questions about the vaccine rollout in Philadelphia.

During the event, PCA President & CEO Najja Orr led panel discussions with:

- Dr. Julianne Burns and Nicole Spector, MSN, CRNP, of the Philadelphia Department of Public Health

- Dr. Sandra Brooks, Dr. Sandra Brooks, chief medical officer of the Center City Division of Jefferson University Hospitals, executive vice president and chief community health equity office

- Angela Foreshaw-Rouse, Manager, State operations and community outreach, AARP PA

- Reverend Kenneth DuPree, representative from PCA's Clergy & Interfaith Coalition

- Wanda Mitchell, PCA director of community engagement and representative from PCA's community advisory councils

If you missed the town hall, or if you would like to view it again, click on the image below:



- These vaccines **DO NOT** contain COVID-19 virus and **CANNOT** give you COVID-19
- **None** of the COVID-19 vaccines can change our DNA in any way
- COVID-19 vaccine will **NOT** cause you to test positive on COVID-19 viral tests



PCA EMPLOYEE NETWORK

**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

04/19/2021

# Doing Our Part to Get Older Philadelphians Vaccinated



Dear PCA staff,

As the city of Philadelphia continues to experience a recent uptick in the number of positive COVID-19 cases, Philadelphia Department of Public Health (PDPH) Commissioner Dr. Thomas Farley is continuing to encourage those over 65 to get vaccinated. Working to support the City in its efforts, PCA is doing its part so that vaccines and information reach Philadelphia's older adult population. Right now, keeping older Philadelphians safe through supporting vaccination efforts and preventative practices is our priority, even as vaccine eligibility has expanded to include all adults in Philadelphia.

We are working to get older Philadelphians registered for appointments, while also assisting the City in their efforts to vaccinate hard-to-reach subsets of the older adult population, including those who are homebound. Since Monday, March 15, PCA has been able to identify homebound consumers and share their information with the City for the Philadelphia Fire Department to contact consumers and schedule in-home vaccinations.

PCA is also assisting consumers who are not homebound in getting scheduled for vaccines. Working with the City, PCA is in the process of offering and directly scheduling vaccine appointments, once they become available, for many of our long-term care consumers.

PCA and the PACE program are also in the planning phase of establishing a hotline, which will allow older Philadelphians to get scheduled for vaccine appointments right over the phone. This hotline will be staffed and operated completely through PACE and will be available to those who have difficulties or are unable to register themselves online.



Another key part of PCA's vaccine efforts is information sharing. For our staff, this comes in the form of our designated COVID-19 posts on i-Net and an <u>internal town hall</u> that was held in the beginning of March and featured an overview of COVID-19 vaccines and the City's distribution plans, presented by two representatives from PDPH.

Toward the end of the month, we also brought together those same representatives, along with health experts and representatives from community-based organizations, to deliver the latest on vaccine information and address some of the prevalent concerns in diverse Philadelphia communities in a <u>virtual community town hall</u> attended by more than 150 participants.

As this vaccine rollout continues in both our City and surrounding areas, PCA will continue to share important information with both our consumers and staff.

I have just a few additional updates in both our city and agency:

- In related COVID vaccine news, the FEMA site operating in Center City at the Pennsylvania Convention Center is currently offering Pfizer vaccines for the foreseeable future. FEMA, in partnership with the City of Philadelphia and the Pennsylvania Emergency Management Agency, have also opened a second Community Vaccination Center (CVC) located in the Franklinville neighborhood at Esperanza Academy Charter High School, which will also be offering the Pfizer vaccine for the foreseeable future while the City continues to pause distribution of the Johnson & Johnson vaccine. Please continue to check i-Net for COVID-19 resources, including vaccination eligibility and site information.

- I am happy to announce that PCA's 642 N. Broad St. building was recently awarded the U.S. Environmental Protection Agency's (EPA) ENERGY STAR® certification for superior energy performance. This certification is awarded to establishments performing in the top 25 percent of buildings nationwide, based on weather-normalized source energy use that considers occupancy, hours of operation, and

other key metrics. A big congratulations to the Housing Department and its director, Mark Myers, for making this happen. More details can be found by <u>clicking here</u>.

• PCA recently crossed a great milestone, delivering more than 2 million meals to older adults through both our home-delivered meals and our Grab & Go meals program since the beginning of the pandemic. This is a huge accomplishment and I want to thank all staff members who work to ensure these meals get to our consumers, every day. Please be sure to check out the entire <u>announcement on i-Net</u>.

• Although vaccine distribution in the city represents a light at the end of a very long tunnel, we still have a way to go. I want to thank PCA's vaccine committee and all staff members who are working diligently as we continue our efforts to get older Philadelphians vaccinated. I want to thank you all and remind everyone to continue to stay safe as we continue to work towards a post-pandemic world.

Sincerely,
Najja R. Orr
President and CEO

Case 2:22-cv-03301-JMY Document 1-1 Filed 08/17/22 Page 20 of 102



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

04/23/2021

# PACE, PCA collaborate on hotline to help Philadelphians 60+ register for vaccine appointments



PCA has worked closely with the Pennsylvania Department of Aging's PACE program to develop the new COVID-19 Vaccine Hotline for Philadelphians, age 60 and older.

The toll-free hotline has been established to assist older Philadelphians with scheduling vaccine appointments at vaccination sites within Philadelphia County.

**The COVID-19 Vaccine Hotline is available to all individuals 60 and older at 1-800-424-4351.**

"PCA is grateful to collaborate with PACE, Pennsylvania's Prescription Assistance Program, on its new hotline, which provides older Philadelphians with an 800-number to call and directly schedule vaccine appointments over the phone," Najja Orr, PCA president and CEO said. "Our collective goal for this hotline is to help bridge the digital divide for those who do not have

Case 2:22-cv-00861-JMY Document 1-1 Filed 03/17/22 Page 21 of 102

access to computers or the internet in scheduling their appointments."

Older Philadelphians can take advantage of this service Monday through Friday from 8:30 a.m. to 5 p.m.

"The Department of Aging is pleased to collaborate with PCA to advance our mutual goal to make sure every older adult who wants a vaccine is able to get one," said Robert Torres, Pennsylvania Secretary of Aging, "We look forward to making measurable progress in reaching older adults and getting them scheduled for appointments through this collaborative effort."

Case 2:22-cv-03381-GPM    Document 1-1    Filed 08/17/22    Page 22 of 102



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

05/01/2021

# PCA seeks COVID-19 vaccine ambassadors



Have you received the COVID-19 vaccine? Do you want to help spread the word about the vaccination process? We're currently seeking input from vaccinated employees who would like to share their experiences with their PCA co-workers.

Employees can participate in a number of ways, from submitting a quote about their choice to get vaccinated to answering some frequently asked questions from staff about the vaccination process.

If you are interested in participating or learning more, please email Christina.Romero@pcaCares.org.

Case 2:22-cv-03331 Document 1-11 Filed 09/11/22 Page 23 of 102



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

06/15/2021

# Submission of CDC COVID-19 Vaccination Cards, Paid Time-off for Vaccination Appointments

## Updated June 15, 2021

Both PCA and PCACC encourage, but do not require at this time, all employees to be vaccinated against the COVID-19 virus.

**Submission of CDC COVID-19 Vaccination Cards:**

- **Record to be provided:** Each fully-vaccinated employee is required to scan and submit a copy of the employee's completed CDC COVID-19 vaccination card to the Human Resources Department (HRD). An employee shall **NOT** provide any other health-related information with a completed CDC COVID-19 vaccination card.

- **When to submit the record:** Please submit the record within one (1) week of receiving either (1) the first injection if the employee has received the Johnson & Johnson COVID-19 vaccine; or (2) the second injection if the employee has received either the Pfizer or Moderna COVID-19 vaccine.

- **Where to submit the record:** An employee is to submit the completed CDC COVID-19 vaccination card to HRD via the following email address: fmla.stdpca@pcacares.org. All COVID-19 vaccination records will be confidentially maintained with restricted access, consistent with HRD's usual policies and practices concerning health records.

- **Coverage:** Inasmuch as HRD is monitoring statistical vaccination levels, an employee is to submit the employee's CDC COVID-19 vaccination card even if the employee is not seeking paid time-off for employee's own vaccination appointment(s).

## Process for Seeking Paid Time-Off for COVID-19 Vaccination Appointments:

- **Promptly notify supervisor:** If an employee schedules his or her own COVID-19 vaccination appointment(s) during regular work hours, the employee must promptly provide the appointment details (e.g., date, time, location) to the employee's supervisor to enable management to arrange for adequate staffing while the employee is unavailable.

- **Paid time off for an employee's own vaccination appointment(s) scheduled during regular work hours:** An employee will not be charged PTO (sick, vacation or personal time) for time off for an employee's own COVID-19 vaccination appointment(s) scheduled during regular work hours. Note that any employee's request for time off to accompany a family member to a COVID-19 vaccination appointment will be subject to all regular attendance, PTO and leave policies.

- **COVID-19 vaccination appointments pre-dating the publication of this process:** Any employee who previously used PTO accruals for his or her own COVID-19 vaccination appointment(s) is directed to contact both their immediate supervisor and HRD at fmla.stdpca@pcacares.org to request a PTO credit. An employee's PTO credit request should include a copy of the completed COVID-19 vaccination card (if not already submitted to HRD); the time and location of the vaccination appointment(s); and the type and amount of PTO time that employee previously used for the appointment(s). An employee shall **NOT** provide any other health-related information in connection with a PTO credit request.

- **Contact HRD if experiencing post-vaccination symptoms affecting the ability to perform job duties:** An employee must promptly contact HRD at fmla.stdpca@pcacares.org if the employee is experiencing post-COVID-19 vaccination symptoms that affect the employee's ability to perform his or her job duties.



PCA EMPLOYEE NETWORK

**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

06/17/2021

# PCA resumed face-to-face services on Monday, June 28



During the COVID-19 pandemic and ongoing epidemic, PCA has continued to monitor information coming out of both local and national centers. As we continue to make strategic decisions for the agency that are both smart and considerate, we continue to monitor the number of positive COVID-19 cases in the city, each week.

When face-to-face services were suspended, it was with the understanding that once the weekly percentage of positive COVID-19 infections fell below 4% in the city for more than four weeks, that the Pennsylvania Department of Aging would expect PCA to resume all face-to-face services. As numbers have consistently stayed under 4% for several weeks, PCA will reinstate face-to-face services and will possibly ease other COVID-19 restrictions on Monday, June 28.

At this time, there is no set date on when PCA will fully re-open our 642 N. Broad St. location. As COVID restrictions are relaxed across the city and the nation, PCA will continue to monitor

trends and data to make the best decisions regarding the safety of our staff and consumers. All PCA employees will continue to be mandated to wear masks/PPE and follow other mandated COVID-19 protocols while working in the field and while working on location at PCA property as we work towards reopening on June 28.

Please continue to monitor i-Net for the latest information regarding what restrictions and protocols will be in place for all staff as we near June 28.

# EXHIBIT A-3

Written Communications

Case 2:22-cv-03331-JFM Document 1-1 Filed 08/17/22 Page 28 of 102



PCA EMPLOYEE NETWORK

**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

12/23/2021

# UPDATE: PCA is Revising its COVID-19 Vaccination Policy to Comply with OSHA's Mandate

*12/23/21 UPDATE: PCA is Revising its COVID-19 Vaccination Policy to Comply with OSHA's Mandate for Employers with 100 Employees*

As you may have heard, the federal Occupational Safety and Health Administration (OSHA) issued COVID-19 vaccination, testing and masking requirements for employers with at least 100 employees. Due to a multitude of legal challenges, those requirements were temporarily suspended last month.

On December 17, however, the Sixth Circuit Court of Appeals reinstated OSHA's requirements. Accordingly, PCA is updating its COVID-19 vaccination policy to comply with OSHA's requirements.

Some of the policy highlights are below:

- No later than January 5, 2022, each employee who has not already submitted a completed CDC COVID-19 vaccination record must email fmla.stdpca@pcacares.org with their vaccination status, indicating whether they are unvaccinated, partially-vaccinated or fully-vaccinated.

- By February 9, 2022, all employees must be fully-vaccinated (i.e., second dose of Moderna or Pfizer vaccines or first dose of Johnson & Johnson vaccine).

- Within five business days of completing the COVID-19 vaccination series, an employee must submit a copy of the completed CDC COVID-19 vaccination record to fmla.stdpca@pcacares.org.

Case 2:22-cv-03331-JFM   Document 1-1   Filed 08/17/22   Page 29 of 102

- PCA's policy will include a COVID-19 vaccination exemption process limited to those employees with medical conditions preventing vaccination or sincerely-held religious objections.

- Employees are strongly encouraged to read the entirety of the CDC's "Key Things to Know" publication at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html.

The updated policy is coming soon. Please continue to check i-Net for the most up-to-date information regarding PCA policies and initiatives.

All employees are reminded that they will not be charged PTO (sick, vacation or personal time) for time off for COVID-19 vaccination or booster appointments scheduled during regular work hours.

# EXHIBIT A-4

Written Communications

Case 2:22-cv-03331-JFM   Document 1-1   Filed 08/17/22   Page 31 of 102



PCA EMPLOYEE NETWORK

**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

01/14/2022

# President's Letter: The Hope of a New Year Springs Eternal



Dear PCA staff,

The start of a new year is excellent motivation to make improvements in our lives and creates a great opportunity to check on our health. Remember, both physical health and emotional wellness are vital to becoming or maintaining your best self. Have you regularly followed up with your primary care physician and scheduled health screenings as recommended? If you are unsure, make an appointment with your health care provider to discuss a schedule of recommended tests or check-ups for the year.

In the words of the great Martin Luther King Jr., "Our lives begin to end the day we become silent about things that matter." I frequently like to take some time to reflect upon Dr. King's legacy and his tremendous impact on our society. With that presence of mind, look to 2022 to make a difference in your neighborhood and community, not just on his National Day of Service on January 17, but all throughout the year.

Case 2:23-cv-03331-JFM   Document 1-1   Filed 08/17/22   Page 32 of 102

As announced during the December 23rd town hall, PCA staff received a permanent 2 percent increase in their salaries, which went into effect in the last pay period of December 2021. Despite our funding constraints, we want to recognize the hard work and dedication of PCA's employees by implementing this staff salary increase.

Additionally, I would like to share a few updates from around the agency:

- PCA has revised its COVID-19 vaccination policy to comply with OSHA's mandate for employers with more than 100 employees. All PCA employees are required to submit their completed CDC COVID-19 vaccination card and must be fully vaccinated by Feb. 9, 2022. All employees are reminded that they will not be charged PTO for time off for COVID-19 vaccination or booster appointments scheduled during regular work hours. Additional related information and details on policy highlights can be found on i-Net.

- Last month, Shani Gilmore was promoted to the role of Executive Administrator of Long-Term Care. In her new role, Shani oversees several vital programs at PCA, including Older Adult Protective Services (OAPS), Long-Term Care Access (LTCA), OPTIONS, the Caregiver Support Program and the Domiciliary Care program. Please join us in congratulating Shani on her promotion and wishing her well in this new role.

- PCA has moved forward with a plan to institute uniform email signatures and voicemail greetings for all employees. These changes will set a consistency standard in all departments at the agency to provide internal and external stakeholders with the full information they need to easily contact PCA and PCA employees. Please update your email signature and voicemail greeting using an email signature template and voicemail greeting script provided on i-Net.

- Last month, PCA began mandatory Lean Process Management trainings for all staff. This system encourages continuous process improvements in organizations to help minimize waste, improve quality and productivity, and increase consumer satisfaction. We welcome feedback and encourage suggestions on how to streamline processes to increase efficiency both within your department and agency wide. Tom Shea will continue scheduling trainings, so please take the time to participate in this valuable session.

- PCA's Winter 2021/Spring 2022 Training Catalog is now available. PCA publishes a training catalog that is made available at no cost to its employees and other professionals working in aging services throughout Philadelphia, including senior center and long-term care facility staff, home care aides and social workers. Many programs in the catalog are suitable for everyone, while some sessions are targeted for particular staff groups. Links to both the program catalog and the course registration site can be found on i-Net.

As we start a new year, I want to thank everyone for the phenomenal work you all have done in providing tremendous support for our Philadelphia communities over the past year. I hope everyone has a happy and healthy 2022.

Sincerely,
Najja R. Orr, MBA
President and CEO

# EXHIBIT A-5

Written Communications



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging

01/19/2022

# UPDATE: Revised deadlines for complying with PCA's COVID-19 vaccination requirement

Last Thursday,  the U.S. Supreme Court placed a hold on the federal Occupational Safety and Health Administration's COVID-19 vaccination rules. Nonetheless, PCA will be moving forward with requiring COVID-19 vaccinations for staff.

PCA's COVID-19 vaccination requirement applies to all employees regardless of their current work location (or telecommuting status) given that PCA employees may, at any time, be recalled to PCA's facilities, visit a PCA facility or otherwise find themselves in proximity to coworkers, consumers, or contractors.  PCA also urges employees to receive booster vaccinations when eligible to do so.

- Employees who have not already submitted completed CDC COVID-19 Vaccination Record Cards must email fmla.stdpca@pcacares.org by Friday, January 21 stating whether they are unvaccinated, partially-vaccinated or fully-vaccinated.

- No later than February 1, 2022, employees must receive a first dose of a two-dose vaccination course (i.e., Moderna or Pfizer vaccines).

- No later than March 1, 2022, employees must receive either (a) a second dose of the Moderna or Pfizer vaccines or (b) a first dose of the Johnson & Johnson vaccine.

- Within five (5) days of completing a COVID-19 vaccination series, employees must submit to fmla.stdpca@pcacares.org a copy of their completed CDC COVID-19 Vaccination Record Cards.

- PCA has implemented a COVID-19 vaccination requirement exemption process. Exemptions are restricted to those based on (a) medical conditions preventing vaccination or (b) sincerely-held religious beliefs.

- An employee desiring an exemption from the COVID-19 vaccination requirement is urged to request the appropriate form (i.e., Form A–Medical Contraindication or Form B–Sincerely-Held Religious Belief) as soon as possible by emailing fmla.stdpca@pcacares.org. Please note that Form A–Medical Contraindication requires a medical certification from a licensed healthcare provider and will not be processed without the completed medical certification.

- An employee will be placed on an unpaid leave of absence if the employee has not completed a vaccination series or received an exemption by 5:00 p.m. EST on March 1, 2022, subject to additional action as may be warranted.

- Employees are strongly encouraged to read the entirety of the CDC's "Key Things to Know" publication at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html.

Employees are reminded that they will not be charged PTO (sick, vacation or personal time) for time off for COVID-19 vaccination or booster appointments scheduled during regular work hours.

Please continue to check i-Net for the most up-to-date information regarding PCA policies and initiatives.

# EXHIBIT A-6

Written Communications

Shelly Beard
134 East Colonial Street Philadelphia, PA. 19120

---

Mildred Samuels- HR Manager/Generalist
Philadelphia Corporation for Aging
642 North Broad Street
Philadelphia, PA 19130
mildred.samuels@pcacares.org

# CONFIDENTIAL COMMUNICATION
### 29 CFR §1630.14(c)(1)

February 15, 2022

RE     Employment Discrimination

Hello Mildred,

This is a confidential communication that I am requesting be included into my personnel file and I want this and subsequent communications to be kept confidential within human resources. I am documenting acts of retaliation and harassment of which I have been subjected to on the job. I also want to speak confidentially to the designated employee or representative for matters involving Title I of the Americans with Disabilities Act and grievances.

Please explain why Philadelphia Corporation for Aging and its employees are discriminating against me based upon a disability you are regarding me as having? I am invoking my rights under the <u>Americans with Disabilities Act</u> as a qualified individual with a disability. You are not only breaking State and Federal law, but you are going against your own written policies in the Philadelphia Corporation for Aging handbook. Please see here:

PCA takes seriously the mandate of the Americans with Disabilities Act of 1990, as amended ("ADA"), not to discriminate on the basis of disability. PCA is committed to full inclusion of people with disabilities in our activities, services and hiring. We welcome people with disabilities and seek to integrate them into everything we do.

PCA strives to comply with all relevant and applicable provisions of the ADA, including any and all amendments under the ADAA, Section 504 of the Rehabilitation Act of 1973 (Pub. L. 93-112), the "General Prohibitions Against Discrimination," 28 C.F.R. §35.130, regulations promulgated under the ADA, and regulations of the Department of Health and Human Services applicable to the benefits, services, programs and activities provided by PCA. Procedure: No otherwise qualified individual with a disability is, solely by reason of his or her disability, excluded from participation in, denied the benefits of, or otherwise subjected to discrimination under a PCA program, service or activity. PCA's offices are wheelchair accessible. In the context of hiring and employment, PCA prohibits any and all types of discrimination against a qualified applicant or employee on the basis of: (1) a current disability, (2) record of a prior disability, (3) being perceived or regarded as disabled, or (4) a relationship or association with someone with a disability. A qualified applicant or employee with a disability is an individual who can perform the essential functions of the job in question, either with or without a reasonable accommodation.

I am being regarded as having a contagious disease without any individualized assessment and continually being asked for my medical records and to submit to medical examinations and interventions (mitigation measures) without any informed consent. It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

Regarding the mitigation measures including but not limited to mask-wearing, vaccines, social distancing, hand-washing and submitting to medical examinations such as the collection of vital statistics (body temperature) or tissue samples (diagnostic testing), <u>I am</u>

not required to accept these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d). If you have some legal authority that overrides this, please provide me with a legal citation.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

My questions are:

1. Why do you regard me as having a disability and what records have you made of this?

**2.   What physician, what medical records, and what complaint made by a physician to a health officer, and "orders of isolation and quarantine" do you rely upon for diagnosing me as having a contagious disease? Please include all, evidence, court records and records from the <u>individualized assessment</u> used in making this determination or diagnosis as required under the New York Public Health Law (PHL) §2120(1)[1] and Title I of the <u>Americans with Disabilities Act</u>.[2]**

3. Please identify the statute <u>and regulation</u> imposing your <u>legal duty of care</u> to protect me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

4. Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

5. Please identify your insurable risk with a copy of your insurance binder showing that you are insured for protecting employees from a contagious disease, and any adverse health consequences they may suffer as a result of your mitigation measures.

6. Regarding the mitigation measures, **a)** why have you refused to include notice that this is under an <u>emergency use authorization</u>, and disclose the <u>risks and benefits</u> of the product, and also advise me of my right to either <u>accept or refuse</u> the product,[3] and **b)** which of these mitigation measures has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having?

7. How are your requests for my medical information and submitting to medical examinations and interventions necessary for the performance of my employment duties?

8. Why are you able to diagnose me with a deadly disease and impose restrictions and medical interventions without my informed consent, without any physician's oversight or judicial approval as required under PHL §2120, yet I am required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy? <u>We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.</u>

Please identify the designated employee responsible for resolving matters concerning the Americans with Disabilities Act and grievances, along with a copy of your "airborne infectious disease exposure prevention plan".[4] <u>On the other hand, if you refuse to answer</u>

---

1    <u>New York State Public Health Legal Manual</u>, Published by the New York State Bar Association (2011)
2    29 CFR 1630.2 et seq.
3    21 USC 360bbb-3
4    New York Labor Law §218-b

these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

Be advised that if my employment is conditioned upon submitting to your mitigation measures, this constitutes discrimination based upon disability, a violation of state and federal law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

Sincerely,

*Shelly Beard*

**Please be advised that this communication and all related communications are confidential and must not be disclosed as per the Americans with Disabilities Act explained below.**

## Post Script Memorandum of Law

Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, permits covered employers, such as Philadelphia Corporation for Aging, to make inquiries into the ability of an employee to perform job-related functions and make inquiries into the nature and severity of the employee's disability, so long as the examination is job-related and consistent with business necessity.  42 U.S.C. §§ 12112(d)(4)(A)–(B); 29 C.F.R. § 1630.14(c).  See also Darby v. Childvine, Inc. 964 F.3d 440 (2020)

Information obtained as a result of such an examination or inquiry regarding the medical condition or history of any employee must be treated as a confidential medical record.  42 U.S.C. §§ 12112(d)(4) (C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).

Confidential medical information may be disclosed in three instances: (1) to inform supervisors or managers regarding necessary restrictions on the work of the employee and necessary accommodations, (2) to medical personnel when emergency treatment is required, and (3) to government officials investigating compliance with this regulation.  42 U.S.C. §§ 12112(d)(4)(C), (d)(3) (B); 29 C.F.R. § 1630.14(c)(1).  None of these exceptions apply with regard to my employment with the Philadelphia Corporation for Aging.

Addendum

# DEMAND FOR RETRACTION

White House, Department of Justice

and Fox News, CNN, MSN, MSNBC

The White House and Department of Justice, via Jen Psaki, made a false and misleading statement in the White House press briefing dated July 6th, 2021.[5]

Demand is made upon the White House and Department of Justice and all news agencies to retract its false statement:

**"Section 564(e)(1)(A)(ii)(III) of the Food, Drug, and Cosmetic Act concerns only the provision of information to potential vaccine recipients and does not prohibit public or private entities from imposing vaccination requirements for a vaccine that is subject to an emergency use authorization."**

and the same demand for retraction of the false and misleading title from the article published by Fox News dba Fox TV Digital Team, CNN, MSN, MSNBC and all news agencies that published the following statement in any way:

**"Federal law doesn't prohibit COVID-19 vaccine mandates"**

and all commentary supporting this statement, and correct this false statement with the complete opinion which the Department of justice failed to include, which states:

"Whether Section 564 of the Food, Drug and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization."[6]

"**We do not address whether other federal, state, or local laws or regulations, such as the Americans with Disabilities Act ("ADA"), might restrict the ability of public or private entities to adopt particular vaccination policies.** See, e.g., Equal Employment Opportunity Commission, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (updated June 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (discussing the ADA)."[7]

Demand is made upon the White House, Department of Justice and all news media agencies to retract its false and misleading statements and publish a correction by disclosing its complete and accurate opinion and to correct this in the same manner in which the false and misleading statement was first made (not on the back page of some newspaper).

These false and misleading statements create a danger and public health hazard by encouraging private businesses and government agencies to violate the law. This is the way the government can push its agenda and avoid being challenged, by distributing a policy to literally millions of locations instead of adopting an actual law, it can mislead millions of people into making the wrong conclusions, and in many cases, result in the death or permanent injury of many thousands or

---

5      https://rumble.com/embed/vhso17/?pub=mt1mb
6      21 USC §360bbb-3
7      https://www.justice.gov/sites/default/files/opinions/attachments/2021/07/26/2021-07-06-mand-vax.pdf

millions of people.

# EXHIBIT A-7

Written Communications

**Re: HR Confidential Letter and Meeting, S. Beard**

Beard, Shelly <Shelly.Beard@pcaCares.org>
Tue 2/22/2022 2:25 PM
To: Samuels, Mildred <Mildred.Samuels@pcaCares.org>

Good Afternoon Mildred,

Since I invoked my ADA rights under State and Federal law of the third prong of the ADA, "Regarded As", I assume you will be ceasing and desisting treating me as a direct threat and discriminating against me and simply allow me to do my job without any more interference.

Also, when you and I met last Tuesday, I requested a clean copy of my HR file and the notes you took during the meeting, both of which I have not yet received.

Sincerely,

**Shelly Beard (she/her)**
**Health Promotion Specialist**
**Philadelphia Corporation for Aging**
**642 N. Broad Street  |  Philadelphia, PA 19130**
**T 215.765.9000 x 5118**
**F 215.765.9066**
**shelly.beard@pcacares.org  |  www.pcaCares.org**



PHILADELPHIA CORPORATION FOR AGING
*Enriching lives, preserving dignity.℠*

*United Way Donor Choice # 855*

---

**From:** Samuels, Mildred <Mildred.Samuels@pcaCares.org>
**Sent:** Tuesday, February 15, 2022 3:28 PM
**To:** Beard, Shelly <Shelly.Beard@pcaCares.org>
**Cc:** Spivey, Shaunise <Shaunise.Spivey@pcaCares.org>
**Subject:** RE: HR Confidential Letter, S. Beard

Hi Shelly,

Confirming receipt of your document.

Mildred

**From:** Beard, Shelly <Shelly.Beard@pcaCares.org>
**Sent:** Tuesday, February 15, 2022 2:30 PM
**To:** Samuels, Mildred <Mildred.Samuels@pcaCares.org>

**Cc:** Beard, Shelly <Shelly.Beard@pcaCares.org>
**Subject:** HR Confidential Letter, S. Beard
**Importance:** High

Good Afternoon Mildred,

Please see the attached Confidential Letter involving Title 1 of the Americans with Disabilities Act and grievances.

Sincerely,


Shelly Beard (she/her)
Health Promotion Specialist
Philadelphia Corporation for Aging
642 N. Broad Street  I  Philadelphia, PA 19130
T 215.765.9000 x 5118
F 215.765.9066
shelly.beard@pcacares.org  I  www.pcaCares.org


PHILADELPHIA CORPORATION FOR AGING
*Enriching lives, preserving dignity.*

United Way Donor Choice # 855

# EXHIBIT A-8

Written Communications

**documented harassment**

**Beard, Shelly** <Shelly.Beard@pcaCares.org>
Wed 2/23/2022 10:27 AM
To: Samuels, Mildred <Mildred.Samuels@pcaCares.org>
Bcc: Shelly Beard <walkbyfa1th2003@gmail.com>

Good Morning Mildred,

When I arrived this morning at 9:45 to 642 N. Broad St., I was stopped by the nurse and security guard who stated I needed to have my temperature checked in order to enter the building. I am documenting this as a form of harassment under the third prong of the ADA Title I, as being "regarded as" having a contagious disease. I am asking that you (PCA) stop treating me as a direct threat. This harassment is causing me anxiety which affects my ability to concentrate.

This statement of harassment and discrimination should be added to my complaint file.


**Shelly Beard (she/her)**
**Health Promotion Specialist**
**Philadelphia Corporation for Aging**
**642 N. Broad Street I Philadelphia, PA 19130**
**T 215.765.9000 x 5118**
**F 215.765.9066**
**shelly.beard@pcacares.org I www.pcaCares.org**



PHILADELPHIA CORPORATION FOR AGING
*Enriching lives, preserving dignity.™*


*United Way Donor Choice # 855*

# EXHIBIT A-9

Written Communications

Case 2:22-cv-04486-JMY   Document 1-1   Filed 08/17/22   Page 50 of 102



**WELCOME TO THE PCA EMPLOYEE NETWORK:**
All the latest news, events and happenings at
Philadelphia Corporation for Aging



02/24/2022

# PCA's COVID-19 vaccine requirement policy and exemption request procedures

Since COVID-19 vaccines became available in early 2021, various public-health-focused governmental entities have vigorously advocated their widespread use. As the Centers for Disease Control and Prevention (CDC) have explained, "COVID-19 vaccines are effective at protecting people from COVID-19 and help keep adults and children from getting seriously sick. COVID-19 vaccines can reduce the risk of people spreading the virus that causes COVID-19. Getting everyone ages 5 years and older vaccinated can help the entire family, including siblings who are not eligible for vaccination and family members who may be at risk of getting very sick if they are infected."

PCA employees are strongly encouraged to read the entirety of the CDC's "Key Things to Know" publication, which is updated from time to time.

On December 23, 2021, PCA posted the foregoing link on the i-net for employees' easy reference, and the link will remain available for the duration of the COVID-19 pandemic.

The efficacy and effectiveness of COVID-19 vaccines have persuaded various governmental

Case 2:22-cv-03951-JFM   Document 1-1   Filed 08/17/22   Page 51 of 102

agencies to propose or implement vaccine mandates and motivated countless employers to require employee vaccinations. PCA is joining that group of employers desiring to protect their employees from disease caused by the COVID-19 virus and will require all employees to be vaccinated by March 1, 2022.

PCA's COVID-19 Vaccination Requirement Policy and supporting materials

*Effective Date: February 1, 2022*

# PCA
# COVID-19 VACCINE REQUIREMENT POLICY
# COVID-19 VACCINE REQUIREMENT PROCEDURES
# COVID-19 VACCINATION REQUIREMENT EXEMPTION REQUEST PROCEDURES

## INTRODUCTION

Since COVID-19 vaccines became available in early 2021, various public-health-focused governmental entities have vigorously advocated their widespread use.   As the Centers for Disease Control and Prevention (CDC) have explained,

> COVID-19 vaccines are effective at protecting people from COVID-19 and help keep adults and children from getting seriously sick.  COVID-19 vaccines can reduce the risk of people spreading the virus that causes COVID-19.  Getting everyone ages 5 years and older vaccinated can help the entire family, including siblings who are not eligible for vaccination and family members who may be at risk of getting very sick if they are infected.

PCA employees are strongly encouraged to read the entirety of the CDC's "Key Things to Know" publication, which is available at the following link and is updated from time to time:

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html

On December 23, 2021, PCA posted the foregoing link on the i-net for employees' easy reference, and the link will remain available for the duration of the COVID-19 pandemic.

The efficacy and effectiveness of COVID-19 vaccines have persuaded various governmental agencies to propose or implement vaccine mandates and motivated countless employers to require employee vaccinations.  PCA is joining that group of employers desiring to protect their employees from disease caused by the COVID-19 virus and will require all employees to be vaccinated by March 1, 2022.

PCA's COVID-19 Vaccination Requirement Policy and supporting materials follow.

*Effective Date: February 1, 2022*

# PCA
# COVID-19 VACCINE REQUIREMENT POLICY
# COVID-19 VACCINE REQUIREMENT PROCEDURES
# COVID-19 VACCINATION REQUIREMENT EXEMPTION REQUEST PROCEDURES

## INTRODUCTION

Since COVID-19 vaccines became available in early 2021, various public-health-focused governmental entities have vigorously advocated their widespread use.   As the Centers for Disease Control and Prevention (CDC) have explained,

> COVID-19 vaccines are effective at protecting people from COVID-19 and help keep adults and children from getting seriously sick.  COVID-19 vaccines can reduce the risk of people spreading the virus that causes COVID-19.  Getting everyone ages 5 years and older vaccinated can help the entire family, including siblings who are not eligible for vaccination and family members who may be at risk of getting very sick if they are infected.

PCA employees are strongly encouraged to read the entirety of the CDC's "Key Things to Know" publication, which is available at the following link and is updated from time to time:

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html

On December 23, 2021, PCA posted the foregoing link on the i-net for employees' easy reference, and the link will remain available for the duration of the COVID-19 pandemic.

The efficacy and effectiveness of COVID-19 vaccines have persuaded various governmental agencies to propose or implement vaccine mandates and motivated countless employers to require employee vaccinations.  PCA is joining that group of employers desiring to protect their employees from disease caused by the COVID-19 virus and will require all employees to be vaccinated by March 1, 2022.

PCA's COVID-19 Vaccination Requirement Policy and supporting materials follow.

# COVID-19 VACCINATION REQUIREMENT POLICY

## PURPOSE

Vaccination is a vital tool to reduce the presence and severity of COVID-19 cases in the workplace, families, communities, and the nation.  PCA requires employees to be vaccinated to safeguard their health.

## SCOPE

This COVID-19 Vaccination Requirement Policy applies to all PCA employees regardless of their current work location (or telecommuting status) given that PCA employees may, at any time, be recalled to PCA's facilities, visit a PCA facility, or otherwise find themselves in proximity to coworkers, consumers, or contractors.  Employees, including all new hires, are required to be "fully vaccinated" as a term and condition of employment with PCA.  Full vaccination is a bona fide occupational qualification (BFOQ) for every position at PCA, even if the applicable job description has not yet been updated to reflect this BFOQ.

To be clear, the "fully vaccinated" requirement ordinarily means two weeks after a second dose in a two-dose series, such as the Pfizer or Moderna vaccines; two weeks after a single-dose vaccine, such as the Johnson & Johnson vaccine; or two weeks after the second dose of any combination of two doses of different COVID-19 vaccines as part of one primary vaccination series.[1]

Employees must report their vaccination status and to provide proof of vaccination by submitting copies of their CDC COVID-19 Vaccination Record Cards to the Human Resources Department (HR) at fmla.stdpca@pcacares.org.  HR will confidentially maintain all employee COVID-19 records of vaccination, testing, healthcare, and vaccination exemption requests.

A PCA employee may request an exemption from the COVID-19 vaccination requirement policy in two (2) limited circumstances.  PCA will evaluate a COVID-19 vaccination requirement exemption request and engage in the interactive process to identify a reasonable accommodation that (a) neither poses a direct threat to the health or safety of others or the requesting employee nor (b) creates an undue hardship for PCA.

PCA will consider a vaccination exemption request based **only** on the following grounds:

- **The COVID-19 vaccine is contraindicated for the requesting employee because the administration of such vaccine would be detrimental to the employee's health; and**

- **The employee has a sincerely-held religious belief, practice, or**

---

[1]PCA understands that the federal government currently is considering expanding the definition of "full vaccination" to include booster vaccinations, and PCA will update this policy to reflect any definitional or other changes issued by governmental agencies.

**observance that precludes the employee from receiving the COVID-19 vaccination.**

Employees must provide complete, truthful and accurate information (1) about their COVID-19 vaccination status; (2) about any test results that may be required in connection with accommodations or other PCA policies that may require the submission of test results; and (3) during the exemption process, as applicable.   Employees also are expected to fully cooperate with HR's inquiries and follow-up requests.   Employees who fail to comply with this policy will be subject to discipline, up to and including the termination of employment.

# COVID-19 VACCINE REQUIREMENT PROCEDURES

**A.     Vaccination Deadlines and Proof of Vaccination Status**

To be vaccinated by **March 1, 2022**, an employee must:

- **Obtain the first dose of a two-dose vaccine no later than February 1, 2022; and the second dose no later than March 1, 2022; or**
- **Obtain one dose of a single dose vaccine no later than March 1, 2022.**

An employee will be considered "partially-vaccinated" if the employee has received only one dose of a two-dose vaccine.

All vaccinated employees are required to submit their CDC COVID-19 Vaccination Record Cards to Human Resources (HR) at fmla.stdpca@pcacares.org within **five (5) calendar days** of

- **The second dose of a two-dose vaccine, such as the Pfizer and Moderna vaccines; or**
- **The first dose of the Johnson & Johnson vaccine.**

**B.     Paid Time Off for Vaccinations and Post-Vaccination Side Effects**

**1.     Paid Time Off for Vaccinations**

An employee who schedules a COVID-19 vaccination appointment during PCA's business hours may take a maximum of four hours of paid work time per dose to travel roundtrip to a vaccination site, receive a vaccination, and return to work (to a maximum of eight hours for a two-dose vaccination series).  If an employee spends less than four hours to obtain a vaccination, the employee will be paid only for the actual work hours expended to receive the vaccination.  If an employee is vaccinated outside of the employee's regular workday, the employee will not be paid for the time.

**2.     Paid Time Off for Post-Vaccination Side Effects**

An employee may use up to two days of paid sick leave immediately following each dose if the employee has side effects from a COVID-19 vaccination that prevents the employee from working.

Employees must email HR at fmla.stdpca@pcacares.org to request time off to be vaccinated during the workday and for sick leave time to recover from side effects from a COVID-19 vaccination.

**C.      Employee Notification of COVID-19 Diagnosis or Exposure; Medical Removal from the Workplace; Return to Work Criteria**

**1.      Employee Notification of COVID-19 Diagnosis or Exposure**

An employee must promptly notify HR under the following circumstances:

- The employee has tested positive for COVID-19 or has been diagnosed with COVID-19 by a licensed healthcare provider;
- The employee is experiencing symptoms of COVID-19; or
- The employee has been in close contact with someone who tested positive for COVID-19 within 14 days of the exposure.

PCA's regular sick leave, FMLA and disability leave policies will apply to employees who test positive for or are diagnosed with COVID-19.

**2.      Medical Removal from the Workplace**

PCA will immediately remove any employee from the workplace if that employee has received a positive COVID-19 test or has been diagnosed with COVID-19 by a licensed healthcare provider (i.e., immediately send them home or to seek medical care, as appropriate).   HR will manage the process for removing from the workplace any COVID-19-positive or -infected employee, including determining whether the employee will be permitted to telecommute during the employee's COVID-19 isolation or quarantine.

**3.      Return to Work Criteria**

An asymptomatic COVID-19 positive employee may not return to a PCA facility or be in proximity to PCA employees, consumers, or contractors until HR approves the employee's return to work.   In general, an asymptomatic COVID-19 positive employee must satisfy one of the following criteria:

- The employee receives a negative result on a COVID-19 nucleic acid amplification test (NAAT) following a positive result on a COVID-19 antigen test if the employee voluntarily elects to undergo a NAAT test for confirmatory testing;

- Meets the return-to-work criteria in CDC's "Quarantine and Isolation Guidelines," available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html; or
- Provides to HR return to work documentation from employee's licensed healthcare provider.

Meanwhile, symptomatic employees may return to work after all the following are true:

- The employee has isolated in accordance with CDC's "Quarantine and Isolation Guidelines," available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html;
- At least 24 hours have passed with no fever without fever-reducing medication; and
- Other symptoms of COVID-19 are improving (loss of taste and smell may persist for weeks or months and need not delay the end of isolation).

For any employee with severe COVID-19 symptoms or an underlying health condition, PCA may require return to work documentation from the employee's licensed healthcare provider.

### D.    Face Masks

All employees must be masked while indoors at any PCA facility, conducting business on behalf of PCA, when occupying a vehicle with another person while on PCA business, or when asked by a consumer or contractor to wear a mask.

A fabric face covering (e.g., gator, scarf or mask) alone offers insufficient protection under this policy.  Adequate masking has the following features:

- Completely covers the nose and mouth;
- Secures to the head with ties, ear loops, or elastic bands that go behind the head; and

Fits snugly over the nose, mouth, and chin with no large gaps on the outside of the faceFor further information about highly protective masks, please see CDC's guidance at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html, which is periodically updated.

An employee otherwise required to wear a mask may remove the mask in the limited circumstances described below.

- When the employee is alone in a room with floor-to-ceiling walls and a closed door;
- While an employee is eating or drinking at the workplace;
- For identification purposes in compliance with safety and security requirements (e.g., upon a lobby desk guard's request); and

- In circumstances in which PCA has determined that masking is infeasible or creates a greater hazard for the employee or others.

Importantly, all mask-less employees must strictly adhere to PCA's social distancing requirements at all times while at a PCA facility.

**E.      New Hires**

All new hires must be vaccinated in accordance with PCA's COVID-19 Vaccination Requirement Policy as a condition of and before commencing employment.

**F.      Confidentiality and Privacy**

All medical information collected from individuals, including vaccination information, test results, and any other information obtained as a result of testing, will be treated in accordance with applicable laws and policies on confidentiality and privacy.  HR will maintain the foregoing information.

**G.      Questions**

Please direct any questions regarding this policy to HR.

*Effective Date: February 1, 2022*

# COVID-19 VACCINATION REQUIREMENT
# EXEMPTION REQUEST PROCEDURES

PCA will consider an exemption request based **only** on the following:

- **The COVID-19 vaccine is contraindicated for the requesting employee because the administration of such vaccine would be detrimental to the employee's health (Form A); and**

- **The employee has a sincerely-held religious belief, practice, or observance that precludes the employee from receiving the COVID-19 vaccination (Form B).**

To begin the exemption process, an employee must request the applicable Exemption Request form from HR at fmla.stdpca@pcacares.org.   The employee must email employee's completed Exemption Request form and supporting documentation to HR at fmla.stdpca@pcacares.org.

The submitted information will be used by appropriate personnel to engage in the interactive process to determine an employee's exemption eligibility and identify possible accommodation(s).   A failure or refusal to supply requested information may affect PCA's ability to adequately understand or evaluate an exemption request and may prevent PCA from effectively engaging in the interactive process to identify possible reasonable accommodations.  Please specifically note that Form A (COVID-19 Vaccination Requirement Exemption Request Based on Medical Contraindication) requires a medical certification from a licensed healthcare provider and will not be processed without the completed medical certification.

An employee seeking an exemption is strongly encouraged to do so as soon as possible to facilitate completing the interactive process by March 1, 2022, the deadline for all employees to be vaccinated or receive an exemption

## Fw: PCA Response to Your Concerns

**Beard, Shelly** <Shelly.Beard@pcaCares.org>
Tue 3/1/2022 4:37 PM
**To:** Shelly Beard <walkbyfa1th2003@gmail.com>

📎 3 attachments (486 KB)
Beard S Memo regarding PCA COVID-19 Vaccination Requirement.pdf; PCA COVID-19 Vaccination Policy
Exemption Procedure and Form A - Medical Contraindication.pdf; PCA COVID-19 Vaccination Policy Exemption
Procedure and Form B - Sincerely Held Religious Belief .pdf;

**Shelly Beard (she/her)**
**Health Promotion Specialist**
**Philadelphia Corporation for Aging**
**642 N. Broad Street I Philadelphia, PA 19130**
**T 215.765.9000 x 5118**
**F 215.765.9066**
**shelly.beard@pcacares.org I www.pcaCares.org**



***United Way Donor Choice # 855***

---

**From:** Samuels, Mildred <Mildred.Samuels@pcaCares.org>
**Sent:** Tuesday, March 1, 2022 4:00 PM
**To:** Beard, Shelly <Shelly.Beard@pcaCares.org>
**Cc:** Spivey, Shaunise <Shaunise.Spivey@pcaCares.org>
**Subject:** PCA Response to Your Concerns

Hi Shelly,

Attached is PCA's formal and comprehensive response to your various concerns and inquiries
about PCA's COVID-19 Vaccination Requirement.   The attached memo includes specific
action items, and those are the only issues that remain open.   PCA will not revisit the issues
in your prior communications arising from or relating to the COVID-19 Vaccination
Requirement.

Thank you.

Mildred Samuels
HR Manager
Philadelphia Corporation for Aging (PCA)
642 N. Broad Street
Philadelphia, PA 19130
Email: mildred.samuels@pcacares.org
P: (215) 399-5961
F: (215) 282-6603

Attachments (3)

# CONFIDENTIAL MEMORANDUM

| | |
|---|---|
| **To:** | **Shelly Beard** |
| **From:** | **Mildred Samuels, Human Resources Manager** |
| **Re:** | **PCA's COVID-19 Vaccination Requirement** |
| **Date:** | **February 28, 2022** |

This Memo comprehensively responds to your various communications concerning PCA's COVID-19 Vaccination Requirement and COVID-19 mitigation efforts.

**PCA's COVID-19 Vaccination Requirement and Exemption Process.** At the outset, be advised that employers have been at liberty for over a century to establish vaccination requirements generally and for the COVID-19 virus specifically, as recently recognized by the Supreme Court. In connection with the COVID-19 pandemic, the EEOC explained as follows:

> Federal EEO laws do not prevent an employer from requiring all employees physically entering the workplace to be vaccinated for COVID-19, so long as employers comply with the reasonable accommodation provisions of the ADA and Title VII of the Civil Rights Act of 1964 and other EEO considerations. (https://www.eeoc.gov/newsroom/eeoc-issues-updated-covid-19-technical-assistance)

Accordingly, the existence of a COVID-19 Vaccination Requirement policy is not a basis for a "regarded as" claim under the ADA.

PCA has established procedures for employees seeking exemptions from the COVID-19 Vaccination Requirement based on medical contraindication and sincerely-held religious belief, as we have discussed. Enclosed are copies of both exemption forms for your consideration and use. A PCA employee seeking an exemption is required to fully complete and sign PCA's form. All exemption forms must be submitted to HR at fmla.stdpca@pcacares.org. You are strongly encouraged to submit your exemption form as soon as possible given the upcoming vaccination deadline of March 1, 2022.

**Personnel File Request.** PCA will make your personnel file available to you for an in-office review. You may not remove any materials from your personnel file. Kindly email me with proposed dates and time for such a review. Be advised HR's investigative notes are not part of an employee's personnel file and will not be made available.

**Temperature Check.** **All** employees who enter 642 N. Broad Street are subject to temperature checks during the COVID-19 pandemic, as we also discussed. PCA does not maintain records of temperature checks. A policy and practice of checking employees'

temperatures in the context of the COVID-19 pandemic is sanctioned by the EEOC and is not a basis for either a "regarded as" claim or a "harassment" claim.

**Summary of Action Items.**

- **As soon as possible, submit to <u>fmla.stdpca@pcacares.org</u> your completed COVID-19 Vaccination Requirement Exemption Form(s); and**
- **Email <u>mildred.samuels@pcacares.org</u> with proposed dates and times for an in-office review of your personnel file.**

Encls. (as described)

**PCA**
**COVID-19 VACCINATION REQUIREMENT**
**EXEMPTION REQUEST PROCEDURES**

PCA will consider an exemption request based **only** on the following:

- **The COVID-19 vaccine is contraindicated for the requesting employee because the administration of such vaccine would be detrimental to the employee's health (Form A); and**

- **The employee has a sincerely-held religious belief, practice, or observance that precludes the employee from receiving the COVID-19 vaccination (Form B).**

To begin the exemption process, an employee must request the applicable Exemption Request form from HR at fmla.stdpca@pcacares.org.   The employee must email employee's completed Exemption Request form and supporting documentation to HR at fmla.stdpca@pcacares.org.

The submitted information will be used by appropriate personnel to engage in the interactive process to determine an employee's exemption eligibility and identify possible accommodation(s).   A failure or refusal to supply requested information may affect PCA's ability to adequately understand or evaluate an exemption request and may prevent PCA from effectively engaging in the interactive process to identify possible reasonable accommodations.  Please specifically note that Form A (COVID-19 Vaccination Requirement Exemption Request Based on Medical Contraindication) requires a medical certification from a licensed healthcare provider and will not be processed without the completed medical certification.

An employee seeking an exemption is strongly encouraged to do so as soon as possible to facilitate completing the interactive process by March 1, 2022, the deadline for all employees to be vaccinated or receive an exemption.

**FORM B:  COVID-19 VACCINATION REQUIREMENT EXEMPTION REQUEST
BASED ON SINCERELY-HELD RELIGIOUS BELIEF**

**Employee Certification
Page 1 of 2**

| Name (print): | Date of Request: |
|---|---|
| | |

Based on sincerely-held religious belief, practice, or observance, I request an exemption from PCA's COVID-19 vaccination requirement.

I understand that PCA is not required to provide an accommodation based on my exemption request if so doing would pose a direct threat to myself or others in the workplace or would create an undue hardship for PCA.

I hereby certify that the statements contained in this Certification (including any additional pages and supporting documents that I submit) are true and correct to the best of my knowledge and belief.

I further understand and acknowledge that if I make a false statement in this Certification or during the interactive process, I am subject to disciplinary action, up to and including the denial of the requested accommodation and the termination of my employment.

| Employee Signature: | Date: |
|---|---|
| | |

*PCA reserves the right to re-evaluate an exemption request or accommodation in accordance with federal, state, and local laws; to respond to evolving business needs or customer requirements; or to address governmental mandates, regulatory changes, or administrative guidance.*

**FORM B:  COVID-19 VACCINATION REQUIREMENT EXEMPTION REQUEST**
**BASED ON SINCERELY-HELD RELIGIOUS BELIEF**

**Employee Certification**
**Page 2 of 2**

Please detail below why you are requesting an exemption from the vaccination requirement including, but not limited to, specifically addressing each of the following:

(1)     Detailing the sincerely-held religious belief, practice, or observance on which your exemption request is based;

(2)     Specifying how your sincerely-held belief, practice, or observance affects your ability to receive a COVID-19 vaccination; and

(3)     Addressing whether your sincerely-held belief, practice, or observance has affected your ability to receive other vaccinations or medical procedures.

You are invited to append additional pages to this Certification and submit any documentation supporting your exemption request based on sincerely-held religious belief, practice, or observance.

**PCA**
**COVID-19 VACCINATION REQUIREMENT**
**EXEMPTION REQUEST PROCEDURES**

PCA will consider an exemption request based **only** on the following:

- **The COVID-19 vaccine is contraindicated for the requesting employee because the administration of such vaccine would be detrimental to the employee's health (Form A); and**

- **The employee has a sincerely-held religious belief, practice, or observance that precludes the employee from receiving the COVID-19 vaccination (Form B).**

To begin the exemption process, an employee must request the applicable Exemption Request form from HR at fmla.stdpca@pcacares.org.   The employee must email employee's completed Exemption Request form and supporting documentation to HR at fmla.stdpca@pcacares.org.

The submitted information will be used by appropriate personnel to engage in the interactive process to determine an employee's exemption eligibility and identify possible accommodation(s).   A failure or refusal to supply requested information may affect PCA's ability to adequately understand or evaluate an exemption request and may prevent PCA from effectively engaging in the interactive process to identify possible reasonable accommodations.   Please specifically note that Form A (COVID-19 Vaccination Requirement Exemption Request Based on Medical Contraindication) requires a medical certification from a licensed healthcare provider and will not be processed without the completed medical certification.

An employee seeking an exemption is strongly encouraged to do so as soon as possible to facilitate completing the interactive process by March 1, 2022, the deadline for all employees to be vaccinated or receive an exemption.

**FORM A:   COVID-19 VACCINATION REQUIREMENT EXEMPTION REQUEST BASED
ON MEDICAL CONTRAINDICATION**

**Employee Certification
Section 1 of 2**

| Name (print): | Date of Request: |
|---|---|
| | |

Based on medical contraindication, I request an exemption from PCA's COVID-19 vaccination requirement.

I understand that PCA is not required to provide an accommodation based on my exemption request if so doing would pose a direct threat to myself or others in the workplace or would create an undue hardship for PCA.

I hereby certify that the statements contained in this Certification (including any additional pages and supporting documents that I submit) are true and correct to the best of my knowledge and belief.

I further understand and acknowledge that if I make a false statement in this Certification or during the interactive process, I am subject to disciplinary action, up to and including the denial of the requested accommodation and the termination of my employment.

| Employee Signature: | Date: |
|---|---|
| | |

*PCA reserves the right to re-evaluate an exemption request or accommodation in accordance with federal, state, and local laws; to respond to evolving business needs or customer requirements; or to address governmental mandates, regulatory changes, or administrative guidance.*

**FORM A:   COVID-19 VACCINATION REQUIREMENT EXEMPTION REQUEST
BASED ON MEDICAL CONTRAINDICATION**

**Medical Certification in Support of Vaccination Exemption/Accommodation
Section 2 of 2 (Two pages)**

Employee Name:

Dear Licensed Healthcare Provider:

The employee named above is subject to a COVID-19 vaccination requirement as a condition of employment.  The PCA employee named above is seeking an exemption to the requirement due to medical contraindications.

Please complete this form to assist PCA in engaging in the interactive process to determine an employee's exemption eligibility and to identify a possible reasonable accommodation.

**The person named above should not receive the COVID-19 vaccine due to the following:**

**As an alternative to a COVID-19 vaccination, my reasonable accommodation recommendation is as follows:**

**This exemption from the COVID-19 Vaccination Requirement is:**

☐ Temporary, expiring on the following date: _____, or when (e.g., a condition resolves)_____; or

☐ Permanent

[Balance of page intentionally left blank]

I certify the above information to be true and accurate and request exemption from the COVID-19 vaccination requirement for the above-named PCA employee.

| | |
|---|---|
| Medical Provider Name (print): | |
| Medical Provide Signature: | Date: |
| Practice Name & Address: | Provider Phone: |

# EXHIBIT A-11

Written Communications

Shelly Beard
134 East Colonial Street
Philadelphia, PA 19120

| Stephanie Marino, ADR Coordinator<br>Philadelphia District Office EEOC<br>801 Market Street<br>Philadelphia, PA 19107 | |
| --- | --- |
| Mildred Samuels, HR Generalist<br>Philadelphia Corporation for Aging<br>642 North Broad Street<br>Philadelphia, PA 19130 | Lisa Alexander, Associate General Counsel<br>Philadelphia Corporation for Aging<br>642 North Broad Street<br>Philadelphia, PA 19130 |

March 3, 2022

# For Philadelphia District Office EEOC
## Charge of Discrimination and Request for Mediation

Re:     Philadelphia Corporation for Aging
        642 North Broad Street
        Philadelphia, PA 19130

### STATEMENT IN SUPPORT OF COMPLAINT

I am making this complaint against my employer for its discrimination against me based upon disability.  The EEOC has the authority and legal duty investigate this complaint.

My employer regards me as having a disability.
My employer has made a record of such disability.

My employer has failed to conduct any individualized assessment to determine if I am a direct threat to anyone.  My employer has failed to engage in any interactive process with me concerning disability rights or resolutions.

I am being treated as if I have an impairment and therefore qualify for the protections of the ADA.

**Witness List:**

Najja R. Orr, najja.orr@pcacares.org, 215-765-9000 ext. 5712

Shaunise Spivey, shaunise.spivey@pcacares.org,  215-765-9000 ext. 5715

Mildred Samuels, mildred.samuels@pcacares.org, 215-765-9000 ext. 5961

- 1 -

Elizabeth Winn, elizabeth.winn@pcacares.org, 215-765-9000 ext. 5103

Wanda Mitchell, wanda.mitchell@pcacares.org, 215-765-9000 ext 5101

Sonya Stephens, sonya.stephens@pcacares.org, 215-765-9000 ext. 5153

Rashida Goodman, 215-236-6909

Jane Galloway, 215-236-6909

I have asked to speak confidentially with my employer's designated employee or representative that is responsible for resolving matters involving the Americans with Disabilities Act and grievances thereunder, but my employer refuses to provide me access to such a person.

Instead, my employer has offered various accommodation measures including but not limited to mask-wearing, staying six feet away from others, frequent hand-washing, collection, use and storage of my vital statistics, histological samples and biometric data and biometric identifiers without adequate or proper notice, adequate disclosures, adequate data retention security or my informed consent, working in isolation, video-graphic and audio-graphic communications in lieu of face to face communications, working behind clear shielding, and injections of certain types of suspensions which are being called "vaccinations" yet do not prevent infection or transmission of any contagious disease and in fact create more disabilities by altering the normal function of my immune system and other cellular functions.   My employer has not merely "offered" such accommodation measures, but threatened me with penalties including those described herein for refusing such accommodations in violation of 29 CFR Part 1630.9(d).

The Philadelphia Corporation for Aging regards me as disabled by classifying me as a *potential or actual source* of COVID-19. Their affirming action of regarding me as a potential or actual source is that I have been given the coercive, threatening, and intimidating choice to vaccinate or be terminated.

The Philadelphia Corporation for Aging regards me as disabled through its classification of me as *unvaccinated*, and the affirming action of regarding me as unvaccinated is that I will be terminated on March 1, 2022 at 5pm on the basis of being unvaccinated. These factors are based solely upon my employers perception of my physical condition.  The Philadelphia Corporation for Aging can label this however it wishes to attempt to avoid this truth, but the classification of my vaccination status as "unvaccinated" has caused me to be fired. The Philadelphia Corporation for Aging has used policies and procedures that are intimidating, threatening, coercive, and that interfere with ADA rights, and this is prohibited under the ADA.

**Interference:**  The Philadelphia Corporation for Aging has deceptively tried to persuade me that my only remedy to the illegal policy demands would be to ask for a medical or religious exemption from these discriminatory policies and practices, thereby creating a false record that is without legal merit. The Philadelphia Corporation for Aging only presented a medical or religious exemption, and did not even mention that ADA accommodations are available, which is obfuscation of and interference with my exercise and enjoyment of the rights held under the ADA, particularly 42 USC 12203(b) and 29 CFR 1630.12(b).

"Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"

https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-issues

All employer forms requesting injection status which only offer medical or religious exemption as "opt-out" choices interfere with ADA rights because they limit an employee's right to invoke ADA protections of the 'Regarded As" prong, including without limitation, the right to be free of discrimination based upon disability, such as being terminated or segregated because of one's physical condition.

**My employer asked me to describe my disability and discuss it with certain employees, even though such disability does not adversely affect my ability to perform the duties of my employment, and has done so without any offer or attempt to make such disclosures in confidence or privately.**

I have requested information regarding the risks and benefits of my employers accommodation measures and in response, my employer has retaliated against me by humiliating me in front of others, by reprimanding me and has threatened or intimidated or coerced me with the threat of suspension of my pay, reduced hours or pay or the termination of my employment for refusing such accommodation measures instead of providing me with the information I requested so that I could make an informed decision.

I have exercised my right to refuse such accommodation measures and proposed instead that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation as a result of my exercise of such rights, and my employer has prevented and interfered with this occurring.

I have not requested reasonable modifications but only that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation.

My employer has instead retaliated against me for exercising my rights under the Americans with Disabilities Act by threatening me with disciplinary measures and penalties for refusing such accommodation measures, including but not limited to suspension or reduction of pay,  limiting my access to the premises where I work, segregation, isolation, termination of employment, exclusion from programs or services that would permit me to improve my employment skills or become eligible for advancement, and denied me the possibility for promotion even when I was eligible or would become eligible.

Each day my employer permits and encourages other employees, including my supervisor and managers to harass and intimidate me and ask me for medical, health and other personal information that does not pertain to, or is not necessary for, the performance of my employment duties.

**I am thereby being denied equal access to the same programs, activities, benefits, jobs or other opportunities for which I am otherwise qualified, while other employees are not.  I am being segregated, excluded and relegated to lesser services by my employer based solely upon disability.**

My employer has written and adopted policies that exacerbate my disabilities and create disabilities while also encouraging others to retaliate against me for exercising my rights under the Americans with Disabilities Act.

My employer has failed or refused to fulfill its duty to aid and encourage me in the exercise of my rights which are protected under the Americans with Disabilities Act.

My employer has demonstrated by the actions of its employees and by its own written policies that it intends to continue such violations and failures to comply with the law and violation my rights.

**REQUEST FOR INVESTIGATION AND MEDIATION**

By filing this Charge, I am formally requesting a mediation hearing to resolve these issues. I request that my Charge be entered manually and a hearing be scheduled. I request the CRTIU Supervisor to enter my Charge into the EEOC system personally as I do not find the online portal acceptable or accessible for entering my Charge. I request a written response from the CRTIU Supervisor confirming that my Charge has been filed within 14 business days of receipt of this Notice.

*Shelly Beard* 3/4/22

Shelly Beard

Enclosure Copies:

1.) Notice of Employment Discrimination & Harassment Based on Disability

- 4 -

# EXHIBIT A-12

Written Communications

## PCA COVID-19 Vaccination Requirement Update

Samuels, Mildred <Mildred.Samuels@pcaCares.org>

Tue 5/3/2022 1:11 PM

To: **FMLA/STD PCA <fmla.stdpca@pcaCares.org>**

Cc: Samuels, Mildred <Mildred.Samuels@pcaCares.org>

Good afternoon,

Earlier this year, PCA announced its COVID-19 Vaccination Requirement for all employees.   PCA's COVID-19 Vaccination Requirement Policy established a vaccination deadline of March 1, 2022.   PCA, however, has not yet received either (1) a copy of your CDC COVID-19 Vaccination Card **or** (2) your completed and signed exemption form based on (a) medical contraindication or (b) sincerely-held religious belief.

Please be advised that all outstanding CDC COVID-19 Vaccination Cards and completed exemption forms are due to the Human Resources Department ("HRD") no later than **4:00 p.m. EDT on Tuesday, May 10, 2022** via the following dedicated email address: fmla.stdpca@pcacares.org.   Any employee failing to submit the required documentation by the deadline will be placed on unpaid leave.

Please contact HRD with any questions.   Thank you for your attention to this important matter.

# EXHIBIT A-13

Written Communications

## Re: PCA COVID-19 Vaccination Requirement Update

Beard, Shelly <Shelly.Beard@pcaCares.org>

Tue 5/10/2022 10:14 AM

To: **FMLA/STD PCA <fmla.stdpca@pcaCares.org>**;Spivey, Shaunise <Shaunise.Spivey@pcaCares.org>;Orr, Najja <Najja.Orr@pcaCares.org>;Samuels, Mildred <Mildred.Samuels@pcaCares.org>

Cc: sun@thezunga.com <sun@thezunga.com>;Beard, Shelly <Shelly.Beard@pcaCares.org>

Bcc: Shelly Beard <walkbyfa1th2003@gmail.com>

Good Morning,

Please see attached to this email: 1) letter from my certified Americans with Disabilities Act advocate, 2) Charge of Discrimination, 3) letter to the EEOC-Philadelphia District Office and 4) Notice of Employment Discrimination & Harassment Based on Disability letter-previously submitted to HR on February 15, 2022.

Sincerely,
Shelly Beard

---

**From:** Samuels, Mildred <Mildred.Samuels@pcaCares.org>
**Sent:** Tuesday, May 3, 2022 1:11 PM
**To:** FMLA/STD PCA <fmla.stdpca@pcaCares.org>
**Cc:** Samuels, Mildred <Mildred.Samuels@pcaCares.org>
**Subject:** PCA COVID-19 Vaccination Requirement Update

Good afternoon,

Earlier this year, PCA announced its COVID-19 Vaccination Requirement for all employees.   PCA's COVID-19 Vaccination Requirement Policy established a vaccination deadline of March 1, 2022.   PCA, however, has not yet received either (1) a copy of your CDC COVID-19 Vaccination Card **or** (2) your completed and signed exemption form based on (a) medical contraindication or (b) sincerely-held religious belief.

Please be advised that all outstanding CDC COVID-19 Vaccination Cards and completed exemption forms are due to the Human Resources Department ("HRD") no later than **4:00 p.m. EDT on Tuesday, May 10, 2022** via the following dedicated email address:  fmla.stdpca@pcacares.org.   Any employee failing to submit the required documentation by the deadline will be placed on unpaid leave.

Please contact HRD with any questions.   Thank you for your attention to this important matter.

John Jay Singleton, Certified ADA Advocate
Professional Advocates Assoc.
1444 Main Street, Suite 1814
Ramona, CA  92065
sun@professionaladvocates.org

| | |
|---|---|
| Shaunise Spivey, Interim Director of HR/ Chief Operating Officer<br>Philadelphia Corporation for Aging<br>642 North Broad Street<br>Philadelphia, PA 19130<br>shaunise.spivey@pcacares.org | Najja Orr, President<br>Philadelphia Corporation for Aging<br>642 North Broad Street<br>Philadelphia, PA 19130 |

May 04, 2022

## RE:  Request for records supporting ADA compliance

Greetings Shaunise and Najja,

Please be advised that this matter pertains to a review of disability discrimination in violation of the law under Title 1 of the Americans with Disabilities Act, at 29 CFR 1630 *et sequitur* and that an EEOC charge for discrimination has been filed with the Philadelphia District Office.

I'm a certified ADA advocate for Shelly Beard, an employee of Philadelphia Corporation for Aging in Philadelphia, Pennsylvania.  She has advised me that Philadelphia Corporation for Aging has adopted discriminatory "Covid policies and procedures" which regard her as having a contagious disease; and having a contagious disease is defined as having a disability under the Americans with Disabilities Act. After reviewing details of her claim; I have this analysis to share with Philadelphia Corporation for Aging based upon the requirements of ADA compliance.

Individuals who give notice that they are a qualified individual with a disability, because they are underlined regarded as having a disability, are fully considered as having a disability under the ADA.   Please be aware, once notice is given of discrimination based upon a perceived disability, the responsibility to prove the existence of the disability shifts to the party who wishes to impose accommodations. My analysis shows that, in this instance, Philadelphia Corporation for Aging must prove that Shelly Beard is a contagious direct threat with impairments of the immune system and impairments of the respiratory system. The criteria for performing this "individualized assessment", as it is referred to in statute, may be found at 29 CFR 1620.2(r).

The individual who is claiming discrimination under the regarded as prong must show that they have received materially adverse employment actions because of being regarded as disabled. Employment actions which are considered materially adverse include: discouraging

or deterring the individual from engaging in protected activity, such as opposing a discriminatory policy or procedure.  Materially adverse employment actions also include an employer refusing equal access to the job and job benefits, as well as engaging in retaliation such as threatening suspension or termination or actually suspending or terminating the employee on the basis of regarding the employee as disabled.  It is immaterial whether the employer believes it is regarding the employee as disabled; the criteria is whether, through policy or procedures, the individual can show materially adverse employment actions occurred.[1]

In order for Philadelphia Corporation for Aging to be in compliance with the ADA in this case, it must either provide equal access or claim and provide proof of a qualifying reason that Philadelphia Corporation for Aging is not required to comply with disability law.  I am providing you with the list of qualifying exemptions for your review:

An individualized assessment has determined the individual is a direct threat. [2]

The perceived disability is shown to be both temporary and minor. [3]

The employer shows that refusing the offered accommodations for the perceived disability would create an undue burden or hardship on the business.[4]

The employer shows that refusing the offered accommodations for the perceived disability would fundamentally alter the manner of operations.

The employer shows that refusing the offered accommodations for the perceived disability creates an insurable safety risk which is not merely speculative and based upon stereotype.

An additional issue the employer should be aware of is that an employee is not required to accept any accommodations for a perceived disability that has not been established by an individualized assessment. Therefore, providing an assessment will be necessary, or showing that the perceived disability is both temporary and minor, or simply providing equal access may be the most effective focus of Philadelphia Corporation for Aging's compliance efforts.

I have reviewed Philadelphia Corporation for Aging's policies and procedures as they pertain to offering accommodations (mitigation measures).  Philadelphia Corporation for Aging may recognize the following:

a) disclosure of medical history or information ("declaring vaccine status"),

b) disclosure and collection of vital statistics ("body temperature", "health surveys"),

c) medical examinations ("testing")

---

1   29 CFR 1630.2 (l)(2)
2   29 CFR 1630.2 (r) lists the criteria for the assessment.
3   29 CFR 1630.2 (l)
4   29 CFR 1630.2 (p) An action requiring significant difficulty or expense when considered in light of the nature and cost of the accommodation relative to the size, resources, nature, and structure of the employer's operation.

d)  medical interventions[5] ("mask-wearing", "vaccines", "boosters"), and

e)  isolation, segregation ("maintaining 6-foot distance from others", "tele-working").

These accommodations are offered for the purpose of preventing the spread of a contagious disease.  Having a contagious disease is defined as having a disability under the Americans with Disabilities Act.

## Philadelphia Corporation for Aging has failed to produce records in support of compliance

• My client has previously requested a copy of the records Philadelphia Corporation for Aging is relying upon to determine that she is a direct threat; and proof that the accommodations Philadelphia Corporation for Aging is offering have the appropriate medical necessity and efficacy. Philadelphia Corporation for Aging has failed to produce this record. This record is needed to show compliance.

• My client has also requested evidence of an insurable safety risk establishing that first, Philadelphia Corporation for Aging has an insurable risk or legal duty of care to protect employees from contagious disease; and second, that it is insured against any adverse health consequences an employee may suffer as a result of accepting these accommodations since they are not being administered under the supervision of any licensed physician and do not consider the prior medical history of the employee or any contra-indications.  Philadelphia Corporation for Aging has failed to produce this record.  This record is needed to show compliance.

Request for additional notice regarding essential job function in support of compliance.

• After careful review and discussion with my client, I have been unable to discover that Philadelphia Corporation for Aging has made any conspicuous notice regarding the manner in which its offered accommodations are actually essential to my client's performance of her employment duties.  To be certain, it may have given notice regarding the so-called "Covid policies and procedures" but I have not discovered any conspicuous notice demonstrating how these are related in any way to my client's ability to perform her essential job functions[6].  This record is needed to support the individualized assessment in order to show that accommodations are needed.

## Regarding "Exemptions"

Additionally, I understand that you have advised my client that she can request a "medical exemption" or a "religious exemption" from these accommodations without disclosing the legal criteria for such "exemptions".  Unless Philadelphia Corporation for Aging shows an insurable risk, legal duty and assessment to impose such accommodations upon employees, as a condition of employment, then there are no legal "exemptions" because there is no established legal duty. Counseling an employee to rely upon them may constitute giving

---

5   29 CFR Part 1630.9(d) of the ADA.  Interventions under Emergency Use Authorization may be refused.   21 USC §360bbb-3(e)(1)(a) of the Food, Drug & Cosmetic Act.

6   29 CFR 1630.2(r)-  The reason the job exists is to perform these essential job functions.

improper legal advice and may be considered as "interference" with rights under the ADA. If Philadelphia Corporation for Aging attempts to exempt my client from some of the accommodations, but not all, then this is still considered as discrimination upon the basis of disability.

**Requiring a "Vaccine" or a "Vaccine Attestation" is not in compliance with informed consent or the ADA.**

Requiring my client to prove or attest to such a "vaccination" amounts to making a record of disability[7] which, in this case, is misclassifying my client as having, a mental or physical impairment that substantially limits one or more major life activities.  This adds another prong of the ADA which requires Philadelphia Corporation for Aging to come into compliance.

My client is not required to participate in clinical trials, nor is she required to participate in clinical trials as a condition of employment.  At this time, the United States, and each of the fifty states, is considered to be within an "emergency use authorization period" or EUA, which means that using any medical intervention or product (masking, testing, "vaccine", "boosters") released under EUA, and pertaining to the reason for the declared EUA, is legally defined as a clinical trial or epidemiological experiment; and therefore, cannot be imposed upon anyone against their right to informed consent.  Please see the fifth footnote and 21 CFR Part 50.20 for reference on the requirements for informed consent.

Although the use of the word "vaccine", and the phrase "fully vaccinated", has been used to describe and market products being offered for "Covid-19"; please be aware that, at the present time, there are no actual vaccines[8], because:

1. there are only injections available which are still in a clinical trial phase under EUA;

2. these injections do not claim to prevent infection or the spread of infection;

3. those "fully vaccinated" are told to continue to take precautions and get "boosters"; which further establishes the fact that there is no true vaccine; and

4. there is no FDA-approved vaccine, which is not under an EUA period, that is commercially available in the United States;

5. therefore, no one can be required to take such a "vaccine" since no true "vaccine" exists.

---

7   29 CFR 1630.2(k)
8 The clinical definition of a "vaccine" is a medical intervention that prevents infection and the spread of infection.

I hope this review of your potential liabilities and compliance issues under the ADA is useful. Please provide the requested records demonstrating ADA compliance within fifteen days or provide equal access to my client.  Do let me know if you have any questions I can assist you with.

Sincerely,

*John Jay Singleton*

John Jay Singleton

Certified ADA Advocate

Copy to:
Shelly Beard

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

no state agency requested

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

5/4/2022
Date

*Charging Party Signature*

NOTARY – *When necessary for State or Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

Shelly Beard
134 East Colonial Street
Philadelphia, PA 19120
walkbyfa1th2003@gmail.com

| Stephanie Marino, ADR Coordinator<br>Philadelphia District Office<br>801 Market Street, Suite 1000<br>Philadelphia, PA 19107-3126<br>stephanie.marino@eeoc.gov | CRTIU Supervisor<br>Philadelphia District Office<br>801 Market Street, Suite 1000<br>Philadelphia, PA 19107-3126 |
|---|---|
| Shaunise Spivey, Interim Director of HR/<br>Chief Operating Officer<br>Philadelphia Corporation for Aging<br>642 North Broad Street<br>Philadelphia, PA 19130<br>shaunise.spivey@pcacares.org | Debra Lawrence, Regional Attorney<br>Philadelphia District Office<br>801 Market Street, Suite 1000<br>Philadelphia, PA 19107-3126 |

May, 04 2022

### For Philadelphia District Office EEOC
### Charge of Discrimination and Retaliation
### Request for Mediation/ Right to Sue Letter

Re: Philadelphia Corporation for Aging
642 North Broad Street
Philadelphia, PA 19130

### STATEMENT IN SUPPORT OF COMPLAINT

I am making this complaint against my employer for its discrimination and retaliation against me based upon disability. The EEOC has the authority and legal duty investigate this complaint.

My employer regards me as having a disability. My employer regards me as having a contagious disease and as having an impairment of my immune system and an impairment of my respiratory system. I am therefore a qualified individual with a disability.

I have been harassed, coerced and intimidated by my employer while it attempts to impose its discriminatory policies upon me.

- 1 -

My Employer's policies demonstrate that it regards me as having a disability; and it has taken adverse employment actions against me because of regarding me as having a disability. I have been injured by being denied equal access to the programs and benefits of employment that are available to other employees and I have suffered loss of income, wages and other benefits from employment. I have been terminated by my employer because of disability; however it is deceptively refusing to officially claim that my employment was terminated so that it would be difficult for me to obtain unemployment compensation.

My employer has also made a record of such disability; by mis-classifying me as having a physical or mental impairment that substantially limits my ability to engage in one or more major life activities.

My employer has failed to conduct any individualized assessment to determine if I am a direct threat to anyone.

My employer has failed to engage in any interactive process with me concerning disability rights or resolutions.

I duly informed my employer that I am a qualified individual with a disability that substantially limits my ability to engage in one or more major life activities with a "Notice of Discrimination and Harassment Based Upon Disability"; a copy is enclosed. My employer ignored my right to claim exemption based upon federal law and personal property rights.

I asked to speak confidentially with my employer's designated employee or representative that is responsible for resolving matters involving the Americans with Disabilities Act and grievances thereunder, but this employee has not provided any assistance to me and not aided me in claiming my rights under the ADA.

My employer has offered various accommodation measures including but not limited to mask-wearing, staying six feet away from others, frequent hand-washing, collection, use and storage of my vital statistics, histological samples and biometric data and biometric identifiers without adequate or proper notice, adequate disclosures, adequate data retention security or my informed consent, working in isolation, video-graphic and audio-graphic communications in lieu of face to face communications, working behind clear shielding, and injections of certain types of suspensions which are being called "vaccinations" yet do not prevent infection or transmission of any contagious disease and in fact create more disabilities by altering the normal function of my immune system and other cellular functions. My employer has not merely "offered" such accommodation measures, but has penalized me for refusing such accommodations in violation of 29 CFR Part 1630.9(d).

My employer never conspicuously disclosed that complying with a COVID-19 vaccine requirement, testing requirement, or masking requirement is an essential function of my job. My employer failed to describe any impairment that prevents me from performing the duties of my official job function without complying with its so-called "Covid" policies". My

- 2 -

employer imposed discriminatory policies upon me that created a disability in that I could not (was not permitted to) do my job without complying with the policies, yet the policies were not related to my essential job function.

My employer has adopted policies that perceive un-diagnosed disabilities in me and then create actual disabilities for me because of forcing its accommodations upon me. My employer encourages others to retaliate against me for exercising my rights under the Americans with Disabilities Act.

I have requested information regarding the risks and benefits of my employers accommodation measures and in response, my employer has retaliated against me by reprimanding me and then terminating my employment for opposing a discriminatory policy in good faith and for refusing the accommodation measures instead of providing me with the information I requested so that I could make an informed decision.

I have exercised my right to refuse such accommodation measures and proposed instead that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation as a result of my exercise of such rights, and my employer has prevented and interfered with this occurring.

My employer has instead retaliated against me for exercising my rights under the Americans with Disabilities Act by threatening me with disciplinary measures and penalties for refusing such accommodation measures, including but not limited to suspension or reduction of pay, limiting my access to the premises where I work, segregation, isolation, termination of employment, exclusion from programs or services that would permit me to improve my employment skills or become eligible for advancement, and denied me the possibility for promotion even when I was eligible or would become eligible.

I am thereby being denied equal access to the same programs, activities, benefits, jobs or other opportunities for which I am otherwise qualified, while other employees are not. I am being segregated, excluded and relegated to lesser services by my employer based solely upon disability.

I have not requested reasonable modifications but only that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation.

Each day my employer permitted and encouraged other employees, including my supervisor and managers to harass and intimidate me and ask me for medical, health and other personal information that does not pertain to, or is not necessary for, the performance of my employment duties.

My employer has failed or refused to fulfill its duty to aid and encourage me in the exercise of my rights which are protected under the Americans with Disabilities Act.

My employer has demonstrated by the actions of its employees and by its own written policies that it intends to continue such violations of my rights and failures to comply

- 3 -

with the law.  My employer has no legal duty of care as demonstrated by its lack of any insurable risk.

## REQUEST FOR MEDIATION/ RIGHT TO SUE LETTER

By filing this Charge, I am formally requesting a mediation hearing to resolve these issues. If my employer refuses mediation and the EEOC does not plan to investigate my Charge, I request an immediate Right to Sue letter without any delay.

## FILE CHARGE MANUALLY

I request that my Charge be entered manually.  I request the CRTIU Supervisor to enter my Charge into the EEOC system manually as I do not find the online portal acceptable or accessible for entering my Charge.  I am not required to have personal access to printers, scanners, laptops, digital signatures and digital encryption technology in order to file a Charge of Discrimination and Retaliation.  I do not waive access to the US postal system.  EEOC internal policies that limit EEOC employee access to their job sites based upon regarding employees as disabled are discriminatory and may be cause to strip the EEOC of federal funding. I request a written response from the CRTIU Supervisor confirming that my Charge has been filed within 14 business days of receipt of this Notice.

Shelly Beard

Enclosure Copies:

1.) Notice of Employment Discrimination & Harassment Based on Disability

Shelly Beard
134 East Colonial Street Philadelphia, PA. 19120

Mildred Samuels- HR Manager
Philadelphia Corporation for Aging
642 North Broad Street
Philadelphia, PA 19130
mildred.samuels@pcacares.org

# CONFIDENTIAL COMMUNICATION
### 29 CFR §1630.14(c)(1)

February 15, 2022

RE    Employment Discrimination

Hello Mildred,

    This is a confidential communication that I am requesting be included into my personnel file and I want this and subsequent communications to be kept confidential within human resources. I am documenting acts of retaliation and harassment of which I have been subjected to on the job. I also want to speak confidentially to the designated employee or representative for matters involving Title I of the Americans with Disabilities Act and grievances.

    Please explain why Philadelphia Corporation for Aging and its employees are discriminating against me based upon a disability you are regarding me as having? I am invoking my rights under the <u>Americans with Disabilities Act</u> as a qualified individual with a disability. You are not only breaking State and Federal law, but you are going against your own written policies in the Philadelphia Corporation for Aging handbook. Please see here:

PCA takes seriously the mandate of the Americans with Disabilities Act of 1990, as amended ("ADA"), not to discriminate on the basis of disability. PCA is committed to full inclusion of people with disabilities in our activities, services and hiring. We welcome people with disabilities and seek to integrate them into everything we do.

PCA strives to comply with all relevant and applicable provisions of the ADA, including any and all amendments under the ADAA, Section 504 of the Rehabilitation Act of 1973 (Pub. L. 93-112), the "General Prohibitions Against Discrimination," 28 C.F.R. §35.130, regulations promulgated under the ADA, and regulations of the Department of Health and Human Services applicable to the benefits, services, programs and activities provided by PCA. Procedure: No otherwise qualified individual with a disability is, solely by reason of his or her disability, excluded from participation in, denied the benefits of, or otherwise subjected to discrimination under a PCA program, service or activity. PCA's offices are wheelchair accessible. In the context of hiring and employment, PCA prohibits any and all types of discrimination against a qualified applicant or employee on the basis of: (1) a current disability, (2) record of a prior disability, (3) being perceived or regarded as disabled, or (4) a relationship or association with someone with a disability. A qualified applicant or employee with a disability is an individual who can perform the essential functions of the job in question, either with or without a reasonable accommodation.

    I am being regarded as having a contagious disease without any individualized assessment and continually being asked for my medical records and to submit to medical examinations and interventions (mitigation measures) without any informed consent. It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

    Regarding the mitigation measures including but not limited to mask-wearing, vaccines, social distancing, hand-washing and submitting to medical examinations such as the collection of vital statistics (body temperature) or tissue samples (diagnostic testing), <u>I am not required to accept these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d)</u>. If you have some legal authority that overrides this, please provide me with a legal citation.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

My questions are:

1. Why do you regard me as having a disability and what records have you made of this?

**2. What physician, what medical records, and what complaint made by a physician to a health officer, and "orders of isolation and quarantine" do you rely upon for diagnosing me as having a contagious disease? Please include all, evidence, court records and records from the individualized assessment used in making this determination or diagnosis as required under the New York Public Health Law (PHL) §2120(1)[1] and Title I of the Americans with Disabilities Act.[2]**

3. Please identify the statute and regulation imposing your legal duty of care to protect me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

4. Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

5. Please identify your insurable risk with a copy of your insurance binder showing that you are insured for protecting employees from a contagious disease, and any adverse health consequences they may suffer as a result of your mitigation measures.

6. Regarding the mitigation measures, **a)** why have you refused to include notice that this is under an emergency use authorization, and disclose the risks and benefits of the product, and also advise me of my right to either accept or refuse the product,[3] and **b)** which of these mitigation measures has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having?

7. How are your requests for my medical information and submitting to medical examinations and interventions necessary for the performance of my employment duties?

8. Why are you able to diagnose me with a deadly disease and impose restrictions and medical interventions without my informed consent, without any physician's oversight or judicial approval as required under PHL §2120, yet I am required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy? We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.

Please identify the designated employee responsible for resolving matters concerning the Americans with Disabilities Act and grievances, along with a copy of your "airborne infectious disease exposure prevention plan".[4] On the other hand, if you refuse to answer these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

Be advised that if my employment is conditioned upon submitting to your mitigation measures, this constitutes discrimination based upon disability, a violation of state and federal

[1]   New York State Public Health Legal Manual, Published by the New York State Bar Association (2011)
[2]   29 CFR 1630.2 et seq.
[3]   21 USC 360bbb-3
[4]   New York Labor Law §218-b

law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

Sincerely,

*Shelly Beard*

**Please be advised that this communication and all related communications are confidential and must not be disclosed as per the Americans with Disabilities Act explained below.**

### Post Script Memorandum of Law

Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, permits covered employers, such as Philadelphia Corporation for Aging, to make inquiries into the ability of an employee to perform job-related functions and make inquiries into the nature and severity of the employee's disability, so long as the examination is job-related and consistent with business necessity. 42 U.S.C. §§ 12112(d)(4)(A)–(B); 29 C.F.R. § 1630.14(c).  See also Darby v. Childvine, Inc. 964 F.3d 440 (2020)

Information obtained as a result of such an examination or inquiry regarding the medical condition or history of any employee must be treated as a confidential medical record.  42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).

Confidential medical information may be disclosed in three instances: (1) to inform supervisors or managers regarding necessary restrictions on the work of the employee and necessary accommodations, (2) to medical personnel when emergency treatment is required, and (3) to government officials investigating compliance with this regulation.  42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).  None of these exceptions apply with regard to my employment with the Philadelphia Corporation for Aging.

**Addendum**

# DEMAND FOR RETRACTION

White House, Department of Justice

and Fox News, CNN, MSN, MSNBC

The White House and Department of Justice, via Jen Psaki, made a false and misleading statement in the White House press briefing dated July 6th, 2021.[5]

Demand is made upon the White House and Department of Justice and all news agencies to retract its false statement:

> **"Section 564(e)(1)(A)(ii)(III) of the Food, Drug, and Cosmetic Act concerns only the provision of information to potential vaccine recipients and does not prohibit public or private entities from imposing vaccination requirements for a vaccine that is subject to an emergency use authorization."**

and the same demand for retraction of the false and misleading title from the article published by Fox News dba Fox TV Digital Team, CNN, MSN, MSNBC and all news agencies that published the following statement in any way:

> **"Federal law doesn't prohibit COVID-19 vaccine mandates"**

and all commentary supporting this statement, and correct this false statement with the complete opinion which the Department of justice failed to include, which states:

> "Whether Section 564 of the Food, Drug and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization."[6]

> **"We do not address whether other federal, state, or local laws or regulations, such as the Americans with Disabilities Act ("ADA"), might restrict the ability of public or private entities to adopt particular vaccination policies.** See, e.g., Equal Employment Opportunity Commission, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (updated June 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (discussing the ADA)."[7]

Demand is made upon the White House, Department of Justice and all news media agencies to retract its false and misleading statements and publish a correction by disclosing its complete and accurate opinion and to correct this in the same manner in which the false and misleading statement was first made (not on the back page of some newspaper).

These false and misleading statements create a danger and public health hazard by encouraging private businesses and government agencies to violate the law. This is the way the government can push its agenda and avoid being challenged, by distributing a policy to literally millions of locations instead of adopting an actual law, it can mislead millions of people into making the wrong conclusions, and in many cases, result in the death or permanent injury of many thousands or millions of people.

---

5   https://rumble.com/embed/vhso17/?pub=mt1mb
6   21 USC §360bbb-3
7   https://www.justice.gov/sites/default/files/opinions/attachments/2021/07/26/2021-07-06-mand-vax.pdf

# EXHIBIT A-14

Written Communications

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 05/19/2022

**To:** Shelly Beard
134 E Colonial St
Philadelphia, PA 19120
Charge No: 530-2022-04193

EEOC Representative:              Legal Unit
                                 (267) 589-9707

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Equal Pay Act (EPA): EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than 2 years (3 years) before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to

suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2022-04193.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
05/19/2022

Karen McDonough
Enforcement Manager

**Cc:**
Shaunise Spivey
Philadelphia Corporation for Aging
sspivey@pcacares.org

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 530-2022-04193 to the District Director at Jamie Williamson, 801 Market St Suite 1000

Philadelphia, PA 19107.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT A-15

Written Communications

**Notice of Concern**

Beard, Shelly <Shelly.Beard@pcaCares.org>

Fri 7/29/2022 2:57 PM

To: Samuels, Mildred <Mildred.Samuels@pcaCares.org>

Good Afternoon Mildred,

I am writing with sincere concern that I am not being included when it comes to opportunities of further growth and development in my current role at PCA. As one of PCA's Master Trainers for the A Matter of Balance program, I have not been asked to join, been invited to, or informed about the monthly collaboration meetings with PCA and the Philadelphia Department of Public Health. I have recently learned of the collaborative meetings, and to my understanding, sessions have been held since the beginning of this calendar year. As a Master Trainer for the A Matter of Balance program, I would like to know the reason I have not been asked to participate in previously held meetings.

Likewise, April 2, 2022, was my ten-year anniversary working at PCA. The employee intranet articles dated June 23rd and July 5th did not include my name as an employee who was recognized for their years of service. On the Employee Appreciation Day PowerPoint- slide 8 lists 10-year employees, however my name is not listed. Why wasn't my name included?

I have not heard from anyone in HR after sending previous correspondences regarding matters of discrimination and retaliation. Therefore, I believe the above incidents are examples of exclusion, isolation, discrimination, and retaliation based on a disability PCA regards me as having. I hope that the questions stated above will be answered and addressed in the coming days.

Lastly, I am requesting this email be included in my personnel complaint file as I am documenting acts of retaliation and discrimination which I have been subjected to.

Sincerely,


Shelly Beard
Health Promotion Specialist
Philadelphia Corporation for Aging
642 N. Broad Street | Philadelphia, PA 19130
T 215.765.9000 x 5118
F 215.765.9066
shelly.beard@pcaCares.org | www.pcaCares.org



United Way Donor Choice # 855