IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHELLY BEARD** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-3331 |
| | : | |
| **PHILADELPHIA CORPORATION** | : | |
| **FOR AGING** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                       **July 21, 2023**

### I.   Introduction

This case is about an employee who alleges that her employer regarded her as disabled when she refused to comply with company-wide COVID-19 mitigation policies. She further alleges that those policies were discriminatory, and that her employer retaliated against her.

The Americans with Disabilities Act of 1990 (ADA) establishes specific causes of action for plaintiffs who experience discrimination because of a disability. To get the case going, the employee needs to plausibly allege that she is disabled and that she experienced an adverse employment action. Here, the problem with Ms. Beard's case is that the ADA does not apply to persons without recognized medical disabilities who simply chose not to comply with an employer's company-wide pandemic mitigation policies, and were not disciplined as a result of that choice. We dismiss Ms. Beard's complaint on the grounds that it fails to make a plausible claim of discrimination or retaliation under the ADA.

### II.   Factual Allegations

According to the complaint, Ms. Beard has worked for Philadelphia Corporation for Aging (PCA) since 2012 as a Health Promotion Specialist. DI 1 ¶ 14. On December 23, 2021, PCA "announced to the plaintiff, and all employees" that it would begin implementing a

COVID-19 vaccination policy "to prevent the spread of COVID-19." *Id.* ¶¶ 67-68. Ms. Beard immediately expressed opposition to the company's policy. *Id.* ¶ 31. As a result, Ms. Beard notified PCA that by virtue of their policy, she was "regarded as" having a disability when she was "mis-classified as having an impaired immune system and an impaired respiratory system by defendant." *Id.* ¶ 18.

The misclassification in turn caused the defendant to "impose accommodations; including but not limited to medical examinations, medical interventions including mask wearing, testing, and experimental injections without first conducting an individualized assessment to determine if she is a direct threat." *Id.* ¶ 26. Additionally, Ms. Beard was "not allowed full access to work in-person because of defendant's discriminatory perceptions, policies and procedures." *Id.* ¶ 19.

Ms. Beard was required to disclose certain "medical records and medical history, and submit[] to medical examinations" during which PCA collected statistics related to the COVID-19 pandemic. DI 1 ¶ 70. And she was "never provided notice of any kind" as to how the foregoing measures related to her job. *Id.* ¶ 71. However, Ms. Beard "did not request any reasonable modification or accommodation to the defendant's so-called 'COVID' policy" and did not submit the required paperwork for a religious or medical exemption. *Id.* ¶¶ 29, 60, 107.

As a result of her unwillingness to comply with the company's mitigation policies, Ms. Beard claims that PCA "impos[ed] punitive measures including isolation and medical examination, [and] threatening to withhold her pay." *Id.* ¶ 26. Furthermore, Ms. Beard has experienced limited access to the workplace and segregation "based on physical conditions," and she was threatened with termination. *Id.* ¶¶ 56-58, 61. And as of July 29, 2022, Ms. Beard is no longer invited to or informed about meetings which she was previously included in, and "her

name is no longer included in company published articles and she is no longer on the lists of employees recognized for their years of service." DI 1-2 ¶¶ 36-37.

Aggrieved by the above events, Ms. Beard brought the instant suit against defendant on August 17, 2022, seeking monetary and injunctive relief. DI 1 at 17-18.

**III.   PCA's Motion to Dismiss**

Ms. Beard sued PCA for violating the ADA by discriminating against her based upon a perceived disability. *Id.* ¶¶ 1, 3. She also maintains an ADA claim for retaliation against PCA relating to her opposition to its COVID-19 mitigation policies. *Id.* ¶ 26.

PCA moves to dismiss Ms. Beard's complaint in its entirety. *See generally* DI 11-2. PCA contends that "[s]tripped of legal conclusions and inflammatory and hyperbolic language, plaintiff's *factual* averments merely assert that PCA uniformly applied to its employees the official COVID policy guidance for employers provided by the CDC, EEOC, and OSHA." *Id.* at 3. PCA asserts that Ms. Beard has not suffered any adverse employment action because her job duties, salary, and benefits have not materially changed since the implementation of PCA's COVID-19 mitigation policies. *Id.* at 11.

Beyond its primary arguments for dismissal, PCA also emphasizes the challenges COVID-19 placed upon employers, especially in the healthcare industry. *Id.* at 8-10. PCA outlines the various CDC and EEOC procedures to which it has adhered and emphasizes the legitimacy of COVID-19 and the ensuing pandemic. *Id.* at 3-7. PCA argues that "COVID-19 is [] highly contagious, [and] dangerous," "especially for Medicare and Medicaid patients," which PCA treats. DI 11-2 at 8. PCA maintains that "innumerable other employers nationwide" have implemented identical policies based off "expert guidance from governmental authorities," which PCA has uniformly applied to its employees. *Id.* at 8-9.

Ms. Beard counters that being "regarded as" disabled in connection with her unwillingness to comply with the company's uniformly enforced COVID-19 mitigation policies renders her a disabled person as defined by the ADA. DI 1 ¶¶ 50-51, 54. She alleges that PCA has discriminated against her by requiring "medical examinations" (temperature checks, mask wearing, and compliance with the vaccine requirement) which she contends are not "job-related and consistent with business necessity." *Id.* ¶¶ 47, 70-71. Finally, Ms. Beard argues that she did, in fact, experience a myriad of adverse employment actions in direct retaliation for the protected activity of demonstrating opposition to the company's mitigation policy. *Id.* ¶¶ 38-41, 106-08.

We heard oral argument by the parties on July 18, 2023. Ms. Beard confirmed that she still works for PCA, and she has not been fired, demoted, disciplined, or suspended. For the reasons set forth below, we will grant PCA's motion to dismiss without prejudice.

**IV.    Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Deciding whether a complaint is facially plausible is "context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal, 556 U.S. at 663-64*.

"Assessing plausibility under *Twombly* and *Iqbal* is a three-step process." *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 661 (E.D. Pa. 2021). "The first step in that process

4

requires an articulation of the elements of the claim." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). The second step is "identify[ing] those allegations that, being merely conclusory, are not entitled to the presumption of truth." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Courts do not grant the presumption of truth to allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* at 790 (quoting *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). The third step asks courts to assume the veracity of any well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *McDermid*, 520 F. Supp. 3d at 661 (quoting *Connelly*, 809 F.3d at 787).

With a pro se plaintiff, we construe the pleadings liberally. *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999). Pleadings by pro se plaintiffs are generally held to a "less stringent standard than formal pleadings drafted by lawyers" and should only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts entitling them to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

V. **Analysis**

Under the ADA, aggrieved employees may seek redress when they suffer adverse employment actions because of their recognized disability. Ms. Beard appears to allege discrimination under 42 U.S.C. § 12112 and retaliation under § 12203. PCA correctly argues that the complaint lacks factual allegations necessary to establish key elements of the ADA claims. The specific missing allegations are discussed below.

 A. **Ms. Beard's discrimination claim under 42 U.S.C. § 12112 fails because she has not adequately pled that she is disabled under the ADA or that she suffered an adverse employment action.**

Ms. Beard's first claim is that she was discriminated against under the ADA for having a "perceived disability." As best as we can tell, Ms. Beard is suggesting that when she refused to comply with the company's mitigation policies, she was regarded as having a disability under the ADA, causing PCA to limit her access to work in-person and requiring Ms. Beard to submit to certain "medical examinations" connected to the COVID-19 pandemic. DI 1 ¶¶ 18-19, 26. The ADA prohibits discrimination by an employer against an otherwise qualified individual on the basis of disability. 42 U.S.C. § 12112(a) (1990). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techns., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Elements one and three are at issue here, and we address each below.

      i. <u>Ms. Beard has not plausibly alleged that she is regarded as disabled under the ADA.</u>

The ADA defines "disability" as (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" of an individual include but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 12102(2)(A). A person is "regarded as" having a disability for purposes of the ADA when the person (1) has an impairment that does not substantially limit major life activities but is treated as such; (2) has an impairment that does

6

substantially limit major life activities but only as a result of the attitudes of others toward such impairment; or (3) has no such impairment, but the covered entity treats that person as having a substantially limiting impairment. 29 C.F.R. § 1630.2(l); *see also Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999). Ms. Beard argues that she falls under the third category: that PCA regarded her as having a disability despite having no such impairment.

To succeed on this theory, a plaintiff must show that their employer misinterpreted information about their limitations to conclude that they were unable to perform a "wide range or class of jobs." *Keyes v. Cath. Charities of the Archdiocese of Phila.*, 415 F. App'x 405, 410 (3d Cir. 2011); *Amoroso v. Bucks Cty. Ct. of Common Pleas*, 2014 WL 1284791, *8 (E.D. Pa. Mar. 27, 2014) ("Simply alleging that an employer knew about a disability is not sufficient to demonstrate that the employer regarded the employee as disabled."). Impairments that are "transitory and minor" do not qualify. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 246 (3d Cir. 2020). The ADA defines transitory as "an impairment with an actual or expected duration of 6 months or less," but does not define "minor." 42 U.S.C. § 12102(3)(B). Although the ADA does not define "minor," courts have held that an "employer must establish that the perceived impairment is objectively *both* transitory and minor" on a case-by-case basis. *Eshleman*, 961 F.3d at 247.

This is not the first ADA case where a plaintiff has alleged that company-wide COVID-19 policies amount to "regarded as" discrimination. For example, in the widely cited *Speaks v. Health System Management* decision, the district court held that an employer did not regard an employee as having a "physical or mental impairment" when it required them to obtain a COVID-19 vaccine or otherwise apply for an exemption. 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022). Courts have recognized that an employee's refusal to get a vaccine required by

an employer is not itself an "impairment," and rather "reflect[ed] a personal choice . . . that . . . cannot be considered an impairment under the ADA," because refusing to get a vaccine required by an employer is not a disability of any sort. *Id.; see also Librandi v. Alexion Pharms., Inc.*, 2023 WL 3993741, at *6 (D. Conn. June 14, 2023) (holding that plaintiff failed to state a plausible ADA claim in refusing to comply with the company's vaccine mandate because no disability was at issue); *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022) (similar); *Jorgenson v. Conduent Transp. Sols.*, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (holding that an employer's "decision to protect its workplace by requiring its employees to attest to their vaccination status — and in some cases, to wear masks — does not plausibly reflect a determination or belief that any of its employees are disabled or impaired."). We agree with these decisions.

Here, Ms. Beard has not alleged that she has an "actual disability" under the ADA, nor does she allege that she has or ever had COVID-19.[1] DI 1 ¶¶ 15, 26, 48, 51, 76-79. Ms. Beard instead argues that by establishing COVID-19 mitigation policies, PCA singled out unvaccinated employees like her for not complying with the mandates and subsequently "regarded her as disabled" with a "contagious disease" or "impaired immune system." DI 1 ¶¶ 18, 30, 37. This

---

[1] Thus, the issue is not whether COVID-19 itself is a disability — a question on which courts have differed. *E.g.*, *Speaks*, 2022 WL 3448649, at *4 n.5. One court in this district held that COVID-19 may be a "physical or mental impairment under the ADA" and that certain forms of COVID-19 can "substantially limit major life activity," affecting "one's respiratory function, gastrointestinal function, and brain function, for periods lasting months after first being infected." *Matias v. Terrapin House, Inc.*, 2021 WL 4206759, *5-6 (E.D. Pa. Sept. 16, 2021). Other courts have held that a mere infection of COVID-19 is generally not a disability under the ADA. *See, e.g.*, *Whitebread v. Luzerne Cty.*, 2023 WL 349939, *4 (M.D. Pa. Jan. 20, 2023) (holding "that mere infection with COVID-19, without noting symptoms or limitations stemming from the infection, does *not* qualify as an impairment under the ADA" (footnote omitted)); *Lundstrom v. Contra Costa Health Servs.*, 2022 WL 17330842, *5 (N.D. Ca. Nov. 29, 2022) (similar).

argument fails as a matter of law. Company-wide COVID-19 mitigation policies like PCA's do not mean that the employer regards all the employees as disabled under the ADA. Nor does being required to comply with those policies constitute a disability. Ms. Beard has not established a disability under the ADA and cannot maintain a claim for discrimination under 42 U.S.C. § 12112.

                ii.   <u>Ms. Beard has not alleged an adverse employment action.</u>

Ms. Beard's discrimination claim must be dismissed for another, independent, reason: she does not allege the legally required adverse employment action. An adverse employment action is one "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Komis v. Sec'y of U.S. Dep't of Lab.*, 918 F.3d 289, 292 (3d Cir. 2019) (quoting *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015)). For example, an employee's exclusion from meetings, without evidence that these exclusions led to material changes to the terms and conditions of their employment, is not an adverse employment action. *Mingo v. Magic Hat Consulting*, 2015 WL 4578912, *4 (E.D. Pa. July 30, 2015); *see also Fulton-Walker v. SEPTA*, 2023 WL 1864865, *7 (E.D. Pa. Feb. 9, 2023) (general allegations that an employee was excluded from meetings, without expansion on how those obstructions affected her "compensation, terms, conditions, or privileges of employment," are "minor grievances" that do not rise to materially adverse employment actions). To that end, in the context of a particular case, even where there is no change in employment status, responsibilities, or compensation, there may be a colorable adverse employment action if the employee's employment situation was substantially worsened. *See DiIenno v. Goodwill Indus.*, 162 F.3d 235, 236 (3d Cir. 1998).

      In the context of this case, Ms. Beard has not alleged any facts suggesting that her job conditions have worsened since PCA's adoption of the COVID-19 mitigation policies. She has

not received a decrease in salary or change in benefits. Rather, it appears to be undisputed that she has since received a pay *increase*. Ms. Beard does allege that PCA isolated her from her workspace and other employees and threatened her with unpaid leave, suspension, and termination. DI 1 ¶¶ 26, 107-116. Ms. Beard alleges that PCA also encouraged its "employees to harass [Ms. Beard] with repetitive emails, intimidating interactions, and threats of termination." *Id.* ¶¶ 119-120. Furthermore, Ms. Beard alleges that she is no longer included or informed about meetings, and that "her name is no longer included in company published articles and she is no longer on the lists of employees recognized for their years of service." DI 15 at 2. But none of these allegations qualify as an adverse employment action, at least because her responsibilities and compensation did not substantially worsen. *DiIenno*, 162 F.3d at 236. Nor do threats of termination rise to the level of an adverse employment action in this case, "because threats alone do not result in a significant change in employment status." *Leitch v. MVM, Inc.*, 2004 WL 1638132, at *9 (E.D. Pa. July 22, 2004). Lacking an adverse employment action, Ms. Beard cannot maintain a claim for discrimination under the ADA under 42 U.S.C. § 12112.

## B. **Ms. Beard's retaliation claim under 42 U.S.C. § 12203 fails because she has not alleged an adverse employment action.**

Ms. Beard's also claims that PCA retaliated against her when she opposed its COVID-19 mitigation policies. The ADA's retaliation provision protects employees who have opposed any act or practice made unlawful by the ADA or who have made a charge under the Act. 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) she was engaged in protected conduct; (2) an adverse action was taken; and (3) there is a causal link between the protected conduct and the adverse action. *Oakley v. Orthopaedic Assocs. of Allentown*, 742 F. Supp. 2d 601, 609 (E.D. Pa. 2010) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)).

Ms. Beard alleges that beginning in March 2021, following her refusal to comply with the company's mandates, she experienced retaliation when PCA isolated her from her workspace and other employees, and threatened her with unpaid leave, suspension, and termination. DI 1 ¶¶ 106-117. But, even assuming that Ms. Beard was engaging in protected conduct,[2] Ms. Beard has not plausibly alleged an adverse employment action, as discussed in more detail above. Her claim for retaliation under 42 U.S.C. § 12203 therefore fails for that same reason.

## VI.   Conclusion

Even construing Ms. Beard's allegations liberally, and accepting her factual allegations as true, we hold that Ms. Beard has failed to state a claim upon which relief could be granted. Ms. Beard has failed to plausibly plead a case of discrimination and retaliation under the ADA. We therefore grant PCA's motion to dismiss (DI 11-2) without prejudice, and grant Ms. Beard leave to amend her complaint within fourteen days, if the facts allow her to do so.

---

[2] A protected activity is generally defined as an action that requests an ADA remedy or that challenges a violation of the ADA. *See* 42 U.S.C. § 12203(a); *see also Hodor v. St. Luke's Hosp. & Health Network*, 2012 WL 4511325, at *6 (E.D. Pa. Sep. 28, 2012) ("[A] plaintiff who complains to his employer that the ADA has been violated is protected from retaliation under the Act."). Ms. Beard's complaint suggests that because "she was engaged in the exercise and enjoyment of one or more major life activities protected under the ADA, such as working, breathing, walking," she "falls within a protected group." DI 1 ¶¶ 82-83. However, a more generous reading of the complaint would likely identify the protected activity as opposing PCA's vaccination policy and refusing to comply with the pandemic-related procedures required by PCA. In any event, we need not decide this question because of the failure to plausibly allege an adverse employment action.